*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2017 UT 62**

IN THE

SUPREME COURT OF THE STATE OF UTAH

2DP BLANDING, LLC,
*Appellee,*

*v.*

RAY W. PALMER, et al.,
*Appellants,*

BLACK OIL CO.,
*Third-Party Plaintiff and Appellee,*

*v.*

FIRST NATIONAL BANK OF LAYTON,
*Third-Party Defendant.*

No. 20150670
Filed September 6, 2017

On Direct Appeal

Seventh District, San Juan
The Honorable Lyle R. Anderson
No. 140700017

Attorneys:

Richard E. Mrazik, Adam E. Weinacker, Salt Lake City, for appellee
2DP Blanding, LLC

Craig C. Halls, Blanding, for appellants

Ronald G. Russell, Royce B. Covington, Jeffery A. Balls, Salt Lake City,
for appellee Black Oil Company

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUDGE HOLMBERG joined.

Having recused herself, JUSTICE DURHAM does not participate herein; DISTRICT JUDGE KENT R. HOLMBERG sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶ 1    The district court proceedings in a prior case resulted in the entry of a court order authorizing a foreclosure sale of parcels of real property. That order was not stayed pending appeal. And the sale was executed while the appeal went forward. The property was eventually purchased by an entity that was not a party to the litigation. We are asked whether the third-party purchaser took the property subject to the resolution of the case on appeal. We answer this question in the negative. We conclude that an appellant who takes no action to preserve his interests in property at issue on appeal has no recourse against a lawful third-party purchaser.

I

¶ 2    This case is an offshoot of a lien dispute between Ray Palmer and First National Bank. In July 2003, Palmer agreed to sell two parcels of commercial real estate to JDJ Holdings, Inc. JDJ obtained two loans to finance the purchase—one from First National and one from Palmer. Both loans were secured by trust deeds. First National recorded its deed on December 5, 2003, and had first position. Palmer recorded his deed on December 12, 2003, and had second position.

¶ 3    Due to a flaw in the initial loan approval, First National was required to record a new deed after Palmer recorded his deed. Before recording the new deed, First National got an erroneous title report that failed to show the Palmer deed. And despite having knowledge of Palmer's loan at its inception, First National relied on the erroneous title report and simply revoked its original deed and recorded the new deed on March 8, 2004. The bank did not obtain a subordination agreement from Palmer. The new deed accordingly appeared to elevate Palmer's deed to first position. But no one discovered this repositioning at the time.

¶ 4    Five years later JDJ defaulted on both loans. Palmer and First National both claimed that their deed was entitled to senior position. The deed holders initiated legal proceedings to settle the dispute, and the district court granted summary judgment to First National. The court held that the bank was entitled to equitable reinstatement of its original deed. It also authorized First National to "exercise all rights and remedies provided by its Trust Deed with respect to the Property," including proceeding with a foreclosure sale.

¶ 5    Palmer appealed the court's decision on April 8, 2011. He challenged the lien priority established by the district court's order. But he did not formally seek or obtain a stay of the order. And he did not file a *lis pendens* on the property at any point during the litigation.

¶ 6    On June 29, 2011, First National issued a Notice of Trustee's Sale under its reinstated trust deed. First National then purchased the parcel at issue in this case, Parcel 2, at the trustee's sale on August 8, 2011. It subsequently conveyed the parcel to Black Oil Company.

¶ 7    In February 2013, the Utah Court of Appeals overturned the district court's order. The court concluded that the district court erred in reinstating First National's first deed. And it remanded for further proceedings in light of Palmer's senior deed.

¶ 8    2DP Blanding, LLC entered the scene shortly thereafter. It purchased Parcel 2 from Black Oil on July 7, 2013. The following day, Palmer recorded a Notice of Default and Election to Sell under his original trust deed.  And the day after that, 2DP recorded its warranty deed for the parcel.[1]

¶ 9    Three months later 2DP filed suit, seeking to quiet title to Parcel 2 and to enjoin Palmer's foreclosure sale. The parties filed competing motions for partial summary judgment. 2DP argued that it owned the parcel free and clear of Palmer's trust deed because Palmer failed to obtain a stay of the court's order authorizing the original foreclosure sale and the parcel was properly sold pursuant to that order. Palmer countered that because First National bought the parcel at the foreclosure sale, all subsequent purchasers of the parcel took

---

[1] Palmer does not assert that 2DP had knowledge of his intention to foreclose Parcel 2 at the time it purchased the property.

subject to First National's knowledge of Palmer's appeal of the court order.

¶ 10   The district court granted summary judgment in 2DP's favor. It concluded that Black Oil and 2DP were both bona fide purchasers and neither had actual knowledge of Palmer's appeal. It also emphasized that the foreclosure order was the only recorded document relating to the First National case.

¶ 11   Palmer did not obtain a stay of that order or provide notice of his appeal by recording a *lis pendens*. So, the court concluded, Black Oil and 2DP "had no notice to suggest that the order was subject to an appeal" and had no independent duty to inquire and determine whether Palmer had appealed the order.

¶ 12   Palmer filed a timely appeal. We review the court's grant of summary judgment for correctness. *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 15, 390 P.3d 314.

II

¶ 13   A party who appeals an adverse final order may obtain a stay of that order pending the decision on appeal. UTAH R. CIV. P. 62(d). When such a stay is entered, all parties are barred from executing the stayed order. But a stay is conditioned upon the payment of a supersedeas bond. *Id.* And some parties accordingly elect not to obtain a stay. In that event, the adverse order and any resulting judgments "remain[] valid and enforceable during the pendency of an appeal."[2] *See, e.g.*, *Cheves v. Williams*, 1999 UT 86, ¶ 47, 993 P.2d 191; *Skeen v. Pratt*, 48 P.2d 457, 458 (Utah 1935); *see also Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1043 (Utah 1983).

¶ 14   Mr. Palmer finds himself in that position. He failed to obtain a stay of the order authorizing First National to proceed with a foreclosure sale—a decision that paved the way for the lawful sale of the property to third parties, first to Black Oil and later to 2DP. Yet Palmer asks us to allow him to avoid the consequences of his decision not to seek a stay of the order in question. He notes that he has now secured a reversal of the order in the decision of the court of appeals. And he now asks us to reinstate his property interest in Parcel 2.

---

[2] *Hughes v. Brown*, 575 N.E.2d 1186, 1190 (Ohio Ct. App. 1989) (citation omitted).

¶ 15 The threshold question presented is whether an appeal of an unstayed foreclosure order creates a cloud on title of the subsequently foreclosed property. If it does, Black Oil and 2DP purchased Parcel 2 subject to Palmer's appeal of First National's foreclosure order—and Palmer maintains a valid and actionable interest in the property. If it doesn't, 2DP owns Parcel 2 free and clear of that appeal—and Palmer has no further recourse against the property or 2DP.

¶ 16 2DP asserts that its title to Parcel 2 is not clouded by Palmer's appeal of the foreclosure order because the subsequent, lawful foreclosure sale extinguished Palmer's trust deed by operation of law. Palmer, on the other hand, claims that his appeal fully preserved his interest in Parcel 2. Under his theory, Black Oil and 2DP were both on inquiry notice of his appeal because First National recorded the foreclosure sale order. And, in Palmer's view, Black Oil and 2DP should have looked to the court docket, seen that the order had been appealed, and realized that Palmer still had a claim to the property.

¶ 17 Palmer also proffers two additional grounds for reversing the district court. First he argues the original foreclosure sale and subsequent transfers were invalid because First National did not properly record the foreclosure sale order. And second he claims that 2DP was barred from challenging the survival of his trust deed under the doctrine of collateral estoppel.[3]

¶ 18 We reject each of Palmer's arguments and agree with 2DP. We first hold that an appeal from an unstayed foreclosure order does not create a cloud on title. Then we reject Palmer's alternative grounds for reversal.

---

[3] The parties frame their arguments on this point as arising under the doctrine of *res judicata.* And we acknowledge that that terminology is sometimes used to encompass issue preclusion or collateral estoppel. But we use the terminology of collateral estoppel here because we find it more precise in distinguishing issue preclusion from claim preclusion (which is often what we mean when we speak of *res judicata*). *See Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 28, 194 P.3d 956 ("Issue preclusion, which is also known as collateral estoppel, 'prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit.'" (citation omitted)).

A

¶ 19    Palmer asserts that 2DP had inquiry notice of the litigation and subsequent appeal regarding Parcel 2. And on that basis he claims that 2DP took the property subject to his trust deed, and thus that the district court erred in ruling that 2DP was a bona fide purchaser that acquired title to Parcel 2 free and clear of Palmer's prior interest in the property.

¶ 20  Palmer's position would require us to rule that an appeal automatically creates a cloud on the title of property affected by an appealed order—even if the appellant does not obtain a stay of the appealed order. We decline to do so.

¶ 21  When an appeal is taken without supersedeas bond or stay, "the judgment or order appealed from is enforceable as though no appeal had been taken." *Skeen*, 48 P.2d at 458 (citation omitted). "Any other result would nullify the requirement that the appellant obtain a stay pending appeal." *Richards v. Baum*, 914 P.2d 719, 721 (Utah 1996).

¶ 22  Granted, a litigant is not entitled to keep all the proceeds of its executed judgment when the underlying order is reversed.[4] But an appellant cannot retroactively invalidate a foreclosure sale if the sale was executed during the appeal and the appellant did not obtain a stay of execution.[5]

¶ 23  The question presented here is whether this latter principle extends to this case. Palmer contends that it does not. Palmer insists that a successful appellant instead maintains an interest in the property

---

[4] *See Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1043 (Utah 1983) ("[A]ppellants seek not to prevent the sale, but to establish their right to a share of the sale proceeds. That relief could be granted even though the sale is already completed and the time for redemption has elapsed.").

[5] *Id.* ("[I]f appellants were seeking on this appeal to prevent the foreclosure sale, and because of their failure to obtain a stay of execution, the sale were legally carried out during the pendency of the appeal and the time for redemption had run, the appeal would be moot." (citing *Crim v. Sorrow*, 255 S.E.2d 19 (Ga. 1979); *DuBose v. Gastonia Mut. Sav. & Loan Ass'n*, 286 S.E.2d 617 (N.C. Ct. App. 1982); *Lord v. City of Tucson*, 455 P.2d 1004 (Ariz. Ct. App. 1969))).

(with a cloud on its title without a stay) after the property is lawfully sold to a third party during the appeal. We disagree.

¶ 24 It has long been held that "[a] person, other than the judgment creditor or his attorney, who purchases at a valid execution sale upon a judgment . . . which is subsequently reversed is entitled to retain the subject matter if, before reversal, he has obtained the legal title and has paid value therefor." RESTATEMENT (FIRST) OF RESTITUTION § 74 cmt. i (AM. LAW INST. 1937). The purchaser, in other words, is "protected as a bona fide purchaser" even if "he has knowledge that an appeal is pending or even that he has knowledge of the grounds for appeal, except where he knows that the judgment was obtained by fraud." *Id.*[6]

¶ 25 We adopt this general rule.[7] Where there is no stay, an appellant loses all actionable rights to the property that has been lawfully conveyed to a third party. And any cloud his prior rights created on the property's title is thereby extinguished.

¶ 26 We recognize one exception to this general rule. When a third party purchases the property subject to a recorded *lis pendens*, it "acquires only the grantor's interest therein, as determined by the outcome of the litigation." *Timm v. Dewsnup*, 921 P.2d 1381, 1392 (Utah 1996) (citing *Hidden Meadows Dev. Co. v. Mills,* 590 P.2d 1244, 1248 (Utah 1979)). This exception applies "[e]ven absent a stay" or supersedeas bond. *Richards*, 914 P.2d at 720 n.1 (citing *Hidden Meadows Dev. Co.*, 590 P.2d at 1247).

---

[6] We cite the First Restatement on this point because it is the clearest articulation of the rule of relevance to this case. But we view this statement of the rule to be consistent with the law as stated in many jurisdictions and in subsequent restatements of the law of restitution. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 18(f) cmt. f (AM. LAW INST. 2011); *see also infra* ¶ 25 n.7 (citing cases adopting a similar rule).

[7] *See Richards*, 914 P.2d at 722 (determining that an appeal of an unstayed foreclosure sale order was moot once the relevant property was lawfully sold to a third party because "[n]o action which we could now take would affect the litigants' rights to the property"); *see also Spahi v. Hughes-Northwest, Inc.*, 27 P.3d 1233, 1236–37 (Wash. Ct. App. 2001) (adopting the First Restatement's standard).

¶ 27 Where the appellant takes no steps to "prevent the [appellee] from legally conveying the disputed land to a third party," however, it loses all rights in the legally conveyed property. *Id.* Thus, when an appellant neither obtains a stay of execution nor timely records a *lis pendens*, he has no recourse against third parties who lawfully acquire the property. And Palmer's failure to take either action in the underlying case accordingly bars him from asserting any interest in Parcel 2 now that it has been lawfully conveyed to a third-party owner.

¶ 28 This conclusion holds regardless of whether Black Oil or 2DP had inquiry or even actual notice of the litigation and pending appeal. Palmer had multiple chances to either limit the conveyed property interests (by recording a *lis pendens* at the beginning of the litigation) or altogether prohibit any conveyance of the property (by obtaining a stay of execution). The purchasers' general knowledge of the litigation does not save Palmer from his failure to take those preventive measures.

B

¶ 29 Palmer also challenges the district court's decision on an alternative ground. He says that the original foreclosure sale did not affect his interest in the properties because First National failed to record the foreclosure order in accordance with the terms of the judgment registry statute, Utah Code section 78B-5-201. That statute prohibits a judgment creditor from establishing a lien or "affect[ing] the title to" the judgment debtor's real property "unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located." UTAH CODE § 78B-5-201(2). It also lists several pieces of information that must be included on the filed judgment, *id.* § 78B-5-201(4), and declares that no lien is created if any of the information is omitted on the filing, *id.* § 78B-5-201(6).

¶ 30 First National failed to include some of the required information when it recorded the initial district court order. And on that basis Palmer asserts that the foreclosure sale and subsequent conveyances of the property could not have affected his lien.

¶ 31 But Palmer's argument relies on a faulty view of the judgment registry statute. The statute applies only to judgment creditors who wish to create a lien on the judgment debtor's property. *See generally id.* § 78B-5-201 (imposing duties on judgment creditor to obtain a lien on judgment debtor's real property). First National's foreclosure order does not create that kind of relationship. Palmer did not owe First National anything as a result of the order. So there was no debt as

envisioned by the statute.[8] The order instead established the relative priority of First National's trust deed against Palmer's deed and authorized the bank to foreclose on the properties against a separate debtor. The judgment registry statute consequently did not govern the recording of First National's foreclosure order.

¶ 32   The recording was instead governed by Utah Code section 57-3-102(1). That section provides that documents "shall, from the time of recording with the appropriate county recorder, impart notice to all persons of their contents." *Id.* Thus, where an order grants a party a greater lien priority than another and authorizes the foreclosure on the relevant property, the foreclosing party need only record the order to give it effect. No further requirements are necessary. Unlike a monetary judgment that does not explicitly grant interests in any property, the recorded order at issue in this case expressly gives notice of the adjudged rights and their impact on the property. So First National properly recorded the order under section 57-3-102.

C

¶ 33   Palmer also claims that the district court erred in upholding arguments advanced by 2DP but rejected by the court of appeals in Palmer's litigation with First National. The court of appeals twice rejected First National's assertion that the litigation was moot in light of the foreclosure sale. First, in Palmer's rule 54(b) appeal of the initial district court order, the court of appeals declined to dismiss the appeal on mootness grounds because "[t]he parties are still before the court, and it appears that the rights of the parties can be adjusted as appropriate." *First Nat'l Bank of Layton v. Palmer*, 2013 UT App 50, ¶ 7 n.2, 362 P.3d 904. The court's second consideration of the mootness question came when the court later summarily denied an unrelated petition for extraordinary relief. Here again First National asserted that the case was moot. A majority denied the petition for extraordinary relief without opinion. But Judge Orme wrote a special concurrence

---

[8] *See id.* § 78B-5-201(4)(b)(iii) (requiring the judgment to include "the amount of the judgment as filed in the Registry of Judgments"); *see also* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "judgment debtor" as "[a] person against whom a money judgment has been entered but not yet satisfied" and "judgment creditor" as "[a] person having a legal right to enforce execution of a judgment for a specific sum of money").

outlining his view that the earlier court of appeals opinion had reinstated Palmer's lien in first position.

¶ 34   In Palmer's view the court of appeals' first decision should be interpreted in light of Judge Orme's special concurrence, which reasoned that Palmer's trust deed was reinstated in first position following the reversal and thus survived the foreclosure sale. Palmer asserts that 2DP, as a subsequent owner of the foreclosed property, was bound by the doctrine of collateral estoppel and could not relitigate the issue of whether the foreclosure sale extinguished Palmer's interest in the property.

¶ 35   But this argument is premised on a misunderstanding of the doctrine of collateral estoppel. This doctrine does not prohibit a party from relitigating an issue unless that issue was fully litigated to a final judgment.[9] And there is no definitive final judgment on whether Palmer's interest in Parcel 2 survived the foreclosure sale. The court of appeals in the underlying case ruled only that Palmer's appeal was not moot. It did not explain the rationale for its holding, other than to say that "it appears that the rights of the parties can be adjusted as appropriate." *First Nat'l Bank*, 2013 UT App 50, ¶ 7 n.2. And a subsequent special concurrence from a single judge does nothing to inform that holding.

¶ 36   In the first appeal, Palmer asserted only that the case was not moot because he could still recover proceeds from the foreclosure sale. Judge Orme issued a special concurrence in a later appeal—following additional proceedings after the initial court of appeals decision— articulating his view on how Palmer's interest might have survived the foreclosure sale. But this was not the express basis for the original court of appeals holding. At a minimum, there are two possible grounds for

---

[9] "We apply a four-part test to determine whether the doctrine of issue preclusion is applicable: First, the issue challenged must be identical in the previous action and in the case at hand. Second, the issue must have been decided in a final judgment on the merits in the previous action. Third, the issue must have been competently, fully, and fairly litigated in the previous action. Fourth, the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous action." *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 37, 16 P.3d 1214 (citation omitted).

the court of appeals' determination that Palmer's appeal in the First National case was not moot. The court could have been recognizing Palmer's right to assert a claim for proceeds on remand. Or it could have concluded that Palmer's interest in the property survived the sale. And this ambiguity precludes application of the doctrine of collateral estoppel, as the relevant issue has not been resolved by a final judgment.[10]

### III

¶ 37   We affirm the district court's grant of summary judgment to 2DP. 2DP is entitled to title of Parcel 2 free and clear of any interest Palmer may have previously had in the property.

---

[10] Because we dismiss Palmer's collateral estoppel arguments on this baseline issue, we do not determine whether 2DP is in privity with First National for purposes of this doctrine.