2023 UT App 51

# THE UTAH COURT OF APPEALS

SHAUN ROBERT ROTHWELL,
Appellee,
*v.*
JENEA ROTHWELL,
Appellant.

Opinion
No. 20210863-CA
Filed May 11, 2023

Fourth District Court, Provo Department
The Honorable Sean M. Petersen
No. 184401412

Julie J. Nelson, Mitchell J. Olsen Sr., and Mitchell J.
Olsen Jr., Attorneys for Appellant

Aaron R. Harris, Thomas J. Burns, and Lacee M.
Whimpey, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN D. TENNEY and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     This case arises from the same facts and circumstances outlined in *Rothwell v. Rothwell*, 2023 UT App 50, which also issues today. The sole question for our consideration in this case is whether the district court exceeded its discretion by staying the property distribution in Shaun and Jenea Rothwell's divorce case pending an appeal. We conclude that the district court did not and, accordingly, affirm the stay.

## BACKGROUND

¶2 The district court entered the parties' Decree of Divorce on June 17, 2021. The court found that the marital estate had a value of approximately $28.5 million and divided it equally. Jenea was awarded cash and assets with a total value of $14,226,979. Shaun was awarded the parties' marital businesses and other assets and investments. Following the district court's ruling in the parties' divorce case, Shaun filed a notice of appeal and moved the district court to stay the distribution of the marital estate pending the appeal. The court granted the stay. Because the parties' marital businesses, which were awarded to Shaun, comprised the majority of the estate's value, he has retained the bulk of the parties' assets while his appeal has been pending. To protect Jenea's interest in the marital assets, the district court ordered that "no assets, liquid or non-liquid, may be disposed of or otherwise encumbered pending the appeal." It also required Shaun to deposit a total of $3.8 million cash with the court—$2.1 million at the time the stay was entered and additional amounts at the end of 2021, 2022, and 2023—to account for equalization payments he was required to make to Jenea.

## ISSUE AND STANDARD OF REVIEW

¶3 "The decision to stay enforcement of a judgment is within the discretion of the reviewing court," and we accordingly review its decision "for an abuse of discretion." *Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 2014 UT 60, ¶ 11, 342 P.3d 779 (quotation simplified).

## ANALYSIS

¶4 Rule 62 of the Utah Rules of Civil Procedure allows a court to stay enforcement of an order while an appeal is pending if the appellant gives a "bond or other security," Utah R. Civ. P. 62(b), "in an amount that adequately protects the adverse party against

loss or damage occasioned by the stay and assures payment after the stay ends," *id.* R. 62(h)(1). The purpose of such security is to "preserve the status quo pending the outcome of the case." *See Hunsaker v. Kersh*, 1999 UT 106, ¶ 8, 991 P.2d 67 (quotation simplified) (addressing the purpose of injunctions); *see also Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 39, 63 P.3d 686 (addressing the purpose of supersedeas bonds). Jenea asserts that the terms of the security the court ordered Shaun to post do not adequately ensure payment and distribution of her half of the marital estate after the stay ends or protect her from loss or damage resulting from the appeal.[1]

---

1. Jenea also argues that a stay of property distribution is inappropriate in a divorce action because a divorce judgment differs from an ordinary judgment. She explains that unlike a typical judgment for compensatory damages addressed by rule 62, a divorce judgment awards assets that already belonged to the party before the divorce. She argues that because the "status quo" during marriage was that "each party already legally owned half the assets and could use them as they wished," staying a property distribution where one party has possession of the majority of the marital assets does not maintain the "status quo" because it "puts at least one party in a worse position than they would otherwise have been" in.

While we acknowledge that the impact of staying a divorce decree is somewhat different from the impact of staying a judgment for compensatory damages and recognize the unfortunate impact that a stay in this situation has in delaying at least one of the parties from moving on from the divorce with no—or at least reduced—financial ties to their ex-spouse, there is nothing in the plain language of rule 62 that limits its application to matters involving compensatory damages. In fact, the language suggests that a judgment for compensatory damages is only one of any number of judgments that may be subject to a stay. *See* Utah

(continued…)

¶5      With the exception of one unpreserved argument,[2] none of the arguments Jenea has raised indicate that the terms of the security were inadequate to ensure she would be paid after the stay ends. The court's injunction prohibited Shaun from disposing of or encumbering any of the marital assets. Given the parties' large estate, this injunction, coupled with the supersedeas bond, was adequate to ensure that the assets Jenea was awarded would be available to her after the stay.

¶6      Jenea suggests that the court's injunction was inadequate to protect her interests because the value of the assets could change over time. But that is always true of assets subject to an

---

R. Civ. P. 62(h) (outlining a presumptive formula for determining the amount of a bond for compensatory damages as an exception to the general rule that security should be "in an amount that adequately protects the adverse party against loss or damage occasioned by the stay and assures payment after the stay ends"). Nevertheless, we observe that it may be desirable for the Supreme Court's Advisory Committee on the Rules of Civil Procedure to consider amending rule 62 to address the unique circumstance of staying a divorce distribution pending appeal and attempt to at least mitigate the potential inequity of such a stay.

2. Jenea points out that the stay order did not include a provision addressing what would happen if Shaun were to die while the appeal is pending. However, Jenea does not appear to have raised this argument below, and even if she had, she does not develop this argument on appeal. We observe that, had Jenea asked for security to protect her against Shaun's death, the court could have, and likely should have, taken steps to secure Jenea's interest in the marital estate, such as a lien on the assets that would be enforceable against Shaun's heirs. *See Wadsworth v. Wadsworth*, 2022 UT App 28, ¶¶ 86–90, 507 P.3d 385, *cert. denied*, 525 P.3d 1259 (Utah 2022). However, Jenea did not ask for such security, and we therefore do not consider this issue further.

injunction, and Jenea has failed to persuade us that the mere possibility that assets may depreciate precludes a court from entering an injunction to secure a party's interest in an asset pending an appeal. She also argues that it was unfair that Shaun had a disproportionate ability to use and enjoy his share of the marital estate. While we are sympathetic to Jenea's situation, we are ultimately not convinced that one party's access to assets during a stay translates to a conclusion that the security provided for the stay is inadequate to protect the other party. Again, that will be the situation any time a stay is granted.

¶7      As to the question of whether the bond and injunction adequately protected Jenea from loss or damage that could result from an appeal, Jenea points to several "losses" she believes the stay has failed to prevent: loss of ability to go forward with her separate life, loss of ownership of assets and monies she was awarded in the divorce, loss of liquidity, loss of enjoyment, and loss of value.

¶8      While one of the goals of a divorce decree should be to allow the parties to go forward with their separate lives, *see Wadsworth v. Wadsworth*, 2022 UT App 28, ¶ 79, 507 P.3d 385, *cert. denied*, 525 P.3d 1259 (Utah 2022), that point does not impact the validity of the stay and the adequacy of the security to protect against loss. As a practical reality, neither party can move forward with their separate life until this matter is fully resolved.

¶9      As to Jenea's alleged loss of ownership, loss of liquidity, and loss of enjoyment, we do not agree that under rule 62, as written, those are losses against which a stay must guard. Any stay will prevent at least one party, and likely both parties, from using or enjoying their property in the way that they would like. Like Jenea, Shaun is unable to sell or encumber the property. And if the court had denied Shaun's request for a stay and required him to transfer property to Jenea pursuant to the terms of the divorce decree, this could have permanently deprived him of

property to which he would be entitled if he prevailed on appeal. This outcome would have been no more equitable than the short-term limitation on Jenea's ability to sell, invest, encumber, or otherwise use the assets she was awarded. And the losses Jenea identifies are not permanent—to the extent she prevails on appeal, she will eventually regain her ownership, use, and enjoyment of her property. While the value of those assets may be somewhat affected by the passage of time, it is just as likely that they will have appreciated as that they will have depreciated.

¶10 Finally, while a loss of value would certainly indicate that the stay did not adequately protect Jenea, she did not ask the court to include terms in the stay that would protect against such losses. On appeal, Jenea suggests that the district court should have included provisions in its injunction requiring Shaun to protect and maintain her assets and to refrain from "using" them in a manner that accelerates their depreciation. She points out, for example, that there is no requirement that Shaun continue to insure her real property. She also observes that Shaun has been able to use her property in a manner that may damage it or cause wear and tear—for example, by driving the vehicles she was awarded and letting their son and his friends live in a townhouse she owns. However, Jenea has pointed us to nothing indicating that she asked the district court to include restrictions on use either before or after the stay was entered. So while we observe that such provisions would have certainly helped to guard Jenea from losses or damage relating to her property, we cannot say that the district court exceeded its discretion in failing to include them.

## CONCLUSION

¶11 Having reviewed Jenea's arguments, we are not convinced that the district court exceeded its discretion in granting the stay on the terms that it did. Accordingly, we affirm.

———