*That This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 20**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MANMOHAN GREWAL and LIPPA GREWAL,
*Appellants*,

*v.*

JUNCTION MARKET FAIRVIEW, L.C. and BLUE CAP INVESTMENT GROUP, L.C.,
*Appellees*.

No. 20220822
Heard October 20, 2023
Filed July 11, 2024

On Direct Appeal

Sixth District Court, Sanpete County
The Honorable Wallace A. Lee
No. 200600066

Attorneys:

Jared L. Anderson, Provo, for appellants

Alan L. Smith, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, JUSTICE HAGEN, and JUSTICE POHLMAN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 Lippa and Manmohan Grewal sold a gas station to Theodore Hansen, who later sold it to Junction Market Fairview, L.C. (JMF). The sale contract between the Grewals and Hansen required Hansen to make regular installment payments and specified that the final balance would become due after approximately three years. Hansen failed to make many of these

installment payments, and he likewise failed to pay the full balance when the contract's call date arrived.

¶2 But the Grewals did not initiate the foreclosure proceeding at the heart of this case until just over six years after Hansen's first missed payment. As the parties agree that the applicable statute of limitations for a breach of contract action is six years, this poses an interesting question: when a contract calls for payment in installments, does the statute of limitations for the enforcement of that contract begin to run as soon as a payment is missed, or only once the final call date of the contract arrives?

¶3 That question deserves a firm answer. But, alas, we cannot provide one. Because the real property involved in this case was sold to a third-party bona fide purchaser shortly before this appeal arrived at our doorstep, our precedent dictates we dismiss the majority of this case as moot.

¶4 The only issue that is not moot concerns the district court's award of attorney fees. The Grewals contend that the court abused its discretion by granting JMF attorney fees under both the Public Waters Access Act and the reciprocal attorney fees statute. While the district court's decision is not perfect, the Grewals fail to show that its flaws amount to an abuse of discretion. Accordingly, we affirm the attorney fees award. And because the Grewals do not oppose JMF's request to recover the attorney fees it reasonably incurred in defending against this appeal, we remand to the district court for a determination of that amount.

## BACKGROUND[1]

¶5 This case centers around the repeated transfers of a gas station (Station) in Fairview, Utah. The first relevant transaction occurred in May 2014, when the Grewals sold the Station to a corporate entity owned by Hansen. Title was transferred to this corporate entity via a deed of trust (Deed), which secured the $400,000 purchase price laid out by the real estate purchase contract (Contract). The Deed also contained an attorney fees provision.

---

[1] "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. We state the facts of this case accordingly." *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 3, 86 P.3d 712 (cleaned up).

¶6    Hansen quickly fell into arrears on the Contract, which required payment in monthly installments. For reasons disputed by the parties, the Grewals did not seek to punish this nonpayment by foreclosing on the Station.[2] In 2016, Hansen sold the Station to JMF. The sale documents acknowledge that the Station was still subject to the Grewals' Deed, and JMF was given a credit against the Station's purchase price apparently to account for this encumbrance.

¶7    In August 2020, with substantial sums still owed on the Contract, the Grewals finally moved to foreclose. After initial negotiations to resolve the matter fell through, JMF filed suit in December 2020 to prevent foreclosure. JMF sought, among other things, a judgment that the Grewals' Contract and Deed were unenforceable because the applicable six-year statute of limitations had run, and an order quieting title in JMF alone.

¶8    The Grewals filed an answer to JMF's complaint but did not assert any counterclaims. JMF moved for partial summary judgment on the statute of limitations and quiet title issues, and the district court granted that motion. The court concluded that the statute of limitations on the Contract and Deed had begun running when Hansen missed the first installment payment in early 2014. In the district court's eyes, this meant that the Grewals' December 2020 foreclosure action was a few months too late.

¶9    The district court awarded sole control of the Station to JMF and ordered the Grewals to release the Station's title. When the Grewals failed to do so, JMF filed the court's judgment with the county recorder and seized the Station in early August 2021. A few days later, JMF sold the Station to another purchaser.

¶10  Around this time, JMF also moved to recover its attorney fees. Specifically, JMF argued it was entitled to recover its fees under two statutes: the reciprocal attorney fees statute contained in Utah Code section 78B-5-826, and the quiet title section of the Public Waters Access Act (PWAA) found in Utah Code section 73-29-204. Somewhat surprisingly, the Grewals' response did not contest that either statute applied. It noted instead that both statutes provided for the permissive, but not mandatory, award of

---

[2] Based on the record available, it appears that the Grewals and Hansen were involved in other business transactions that may have contributed to the decision to delay foreclosure proceedings.

fees and argued that JMF didn't deserve its fees under either. The district court received motions from both sides, held a hearing, and concluded that JMF was entitled to recover under both statutes.

¶11 Having exhausted their options before the district court, the Grewals sought appellate review. We retained the case to hear it directly.

## STANDARDS OF REVIEW

¶12 JMF raised the issue of mootness before us in a pre-briefing motion to dismiss.[3] "Because this issue arises for the first time here on review, our decision is not governed by any standard of review, and we decide the matter as a question of law in the first instance."[4]

¶13 The Grewals challenge the district court's award of attorney fees under both the reciprocal attorney fees statute and the PWAA. Generally speaking, "[w]hether attorney fees are recoverable in an action is a question of law, which we review for correctness."[5] But to the extent that the governing statute grants the district court discretion to award fees, "we review [the district court's] decision for an abuse of that discretion."[6]

## ANALYSIS

¶14 The Grewals bring eight claims on appeal. The first seven claims argue that the district court erred by granting partial summary judgment on the issues of wrongful foreclosure and quiet title. Before we can reach the merits of those arguments, however, we must address JMF's claim that the transfer of the Station to a third party renders the Grewals' assertions of error moot under *Richards v. Baum*.[7]

---

[3] JMF also raised the issue of mootness below in response to one of the Grewals' post-judgment motions. The parties have not appealed the district court's denial of that motion.

[4] *JLPR LLC v. Procurement Pol'y Bd.*, 2021 UT App 52, ¶ 14, 492 P.3d 784.

[5] *Fericks v. Lucy Ann Soffe Tr.*, 2004 UT 85, ¶ 22, 100 P.3d 1200 (cleaned up).

[6] *Federated Cap. Corp. v. Haner*, 2015 UT App 132, ¶ 10, 351 P.3d 816.

[7] 914 P.2d 719 (Utah 1996).

¶15  We accept JMF's argument that *Richards* governs this case and hold that the doctrine of mootness prevents us from reaching the merits of these seven issues. But this mootness argument does not apply to the Grewals' final argument of error, which challenges the district court's award of attorney fees to JMF.

¶16  The district court found that an award of attorney fees to JMF was appropriate under two different statutes: the reciprocal attorney fees statute[8] and the PWAA.[9] The Grewals challenge both awards on different grounds. Because the district court's ruling was phrased in the alternative, the Grewals must show that neither statute supports it.

¶17  The Grewals fail to make that showing. We have our doubts as to whether either statute applies to this case. But the Grewals do not challenge the applicability of those statutes. And as to the reciprocal fees statute in particular, the record does not support the Grewals' argument that the award of fees constituted an unjust windfall for JMF, as prohibited by *Bilanzich v. Lonetti*.[10]

¶18  The result is that we dismiss the majority of the Grewals' appeal as moot. On the surviving attorney fees issue, we hold that the district court did not abuse its discretion by awarding fees under the reciprocal attorney fees statute. Accordingly, we affirm.

I. THE MAJORITY OF THE GREWALS' APPEAL IS MOOT

¶19  An issue is moot "if the relief requested is rendered impossible or of no legal effect."[11] Our prior cases hold that "we lack the power to address the underlying merits" of a moot issue.[12]

---

[8] UTAH CODE § 78B-5-826.

[9] *Id.* § 73-29-204(9). Both the parties and the district court mistakenly refer to Utah Code section 73-29-204 as the "Quiet Title Act." Title 73, chapter 29 of the Utah Code actually contains the PWAA. The statutes governing quiet title actions are found in title 78B, chapter 6, part 13 of the Utah Code.

[10] 2007 UT 26, 160 P.3d 1041.

[11] *Transp. All. Bank v. Int'l Confections Co.*, 2017 UT 55, ¶ 15, 423 P.3d 1171 (cleaned up).

[12] *Utah Transit Auth. v. Loc. 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 12, 289 P.3d 582.

¶20 Applying the mootness doctrine in controversies involving the sale of real property is a thorny issue that this court has addressed on multiple occasions. JMF argues that one such case, *Richards v. Baum*,[13] governs the present appeal. As the facts of that case are similar to those before us—and are broadly similar to most mootness disputes involving real property—they are worth exploring.

¶21 *Richards* arose out of a dispute over the sale of real property from the Baums to the Richardses.[14] After the parties had signed a contract, the Baums backed out, leading the Richardses to file suit "seeking a decree quieting title and an order requiring [the Baums] to specifically perform" the sales contract.[15] After a bench trial, the court quieted title in favor of the Baums, and the Richardses appealed.[16]

¶22 Crucially, the Richardses did not seek a stay of the trial court's judgment during the pendency of their appeal.[17] Rule 62 of the Utah Rules of Civil Procedure allows parties to "obtain a stay of the enforcement of a judgment" while an appeal takes place.[18] In the absence of such a stay, "the adverse order and any resulting judgments remain valid and enforceable during the pendency of [the] appeal."[19] In context, this means that a rule 62 stay prevents the prevailing party from transferring or selling the disputed property to anyone else. Without that stay, the prevailing party can dispose of the property as it sees fit.

¶23 Obtaining a rule 62 stay is not without cost. Rule 62 requires the party seeking the stay to "provid[e] a bond or other

---

[13] 914 P.2d 719 (Utah 1996).

[14] *Id.* at 720.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] UTAH R. CIV. P. 62(b).

[19] *2DP Blanding, LLC v. Palmer*, 2017 UT 62, ¶ 13, 423 P.3d 1247 (cleaned up).

security,"[20] commonly referred to as a supersedeas bond.[21] The district court determines the bond amount and must ensure the amount "adequately protects the adverse party against loss or damage occasioned by the stay and assures payment after the stay ends."[22] Given the large sums of money involved in property disputes, supersedeas bonds may quickly run to the tens, or even hundreds, of thousands of dollars.[23] Finding liquid assets sufficient to post a supersedeas bond may be a significant challenge to many litigants.[24]

¶24 The decision not to seek a stay proved to be fatal to the Richardses' case. During the pendency of the appeal, the Baums sold the property at issue to a third party.[25] That sale triggered a longstanding legal rule that protects bona fide purchasers by preventing courts from undoing legitimate sales of property.[26] The consequences of this rule can be dramatic; when disputed property is sold during an appeal, the appealing party has "no recourse against third parties who lawfully acquire the property."[27] Even if

---

[20] UTAH R. CIV. P. 62(b).

[21] *See 2DP Blanding*, 2017 UT 62, ¶ 13.

[22] UTAH R. CIV. P. 62(h)(1); *see also* 5 AM. JUR. 2D *Appellate Review* § 374 (2024) ("[T]he amount of a supersedeas bond typically takes into account the amount needed to satisfy the judgment appealed from, as well as costs, interest, and any damages which might be caused by the stay pending appeal.").

[23] *See, e.g., Rothwell v. Rothwell*, 2023 UT App 51, ¶ 2, 530 P.3d 955 (affirming a $3.8 million supersedeas bond to stay judgment on a $14.2 million award of cash and assorted property).

[24] *See* Kimberly M. Robinson & Joshua S. Roseman, *Obstacles to Obtaining Alternate Security and Meaningful Appellate Review of the Trial Court's Decision Regarding the Same*, APP. ADVOC., Summer 2001, at 18 ("Every appellate practitioner, at some point, will be faced with a client who wants to appeal from an adverse money judgment but cannot afford a supersedeas bond to prevent the enforcement of the judgment pending the appeal.").

[25] *Richards*, 914 P.2d at 720.

[26] *See 2DP Blanding*, 2017 UT 62, ¶¶ 24–27; RESTATEMENT (FIRST) OF RESTITUTION § 74 (AM. L. INST. 1937).

[27] *2DP Blanding*, 2017 UT 62, ¶ 27.

a court were to reverse the underlying judgment, title to the property cannot be returned.

¶25 When this rule is applied to the facts of *Richards*, the mootness issue becomes evident. A case is moot when "the relief requested is rendered impossible or of no legal effect."[28] The only remedy the Richardses requested at trial was specific performance of a real estate contract and title to the contested property.[29] The sale of the property to a bona fide purchaser[30] meant that we could not render a decision on appeal that would grant that relief. Because there was "[n]o action which we could . . . take [that] would affect the litigants' rights to the property," we held that the case was moot.[31]

¶26 Two justices dissented, contending that this result could be avoided by relying on two rules in the Utah Rules of Civil Procedure.[32] Rule 15 allows parties to seek leave to amend their pleadings to include new claims for relief.[33] Rule 54(c) allows district courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."[34]

¶27 The dissent reasoned that these rules meant that the door to relief was not completely closed, as each created the possibility of recovering monetary damages.[35] Under rule 15, the dissent asserted, the district court could allow the Richardses to amend their pleadings to include a prayer for monetary damages.[36] Or,

---

[28] *Int'l Confections Co.*, 2017 UT 55, ¶ 15 (cleaned up).

[29] *Richards*, 914 P.2d at 722.

[30] "A bona fide purchaser is one who pays valuable consideration for a conveyance, acts in good faith, and takes without notice of an adverse claim or others' outstanding rights to the seller's title." *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993).

[31] *Richards*, 914 P.2d at 722.

[32] *Id.* at 723–24 (Stewart, A.C.J., and Durham, J., dissenting).

[33] UTAH R. CIV. P. 15.

[34] *Id.* R. 54(c).

[35] *Richards*, 914 P.2d at 723–24 (Stewart, A.C.J., and Durham, J., dissenting).

[36] *Id.* at 723.

under rule 54(c), the district court could simply use its equitable power to grant the Richardses monetary damages.[37]

¶28 Ultimately, this view did not prevail. The majority opinion noted that rules 15 and 54(c) applied only "to *a trial court's* authority prior to its final judgment."[38] Neither rule affects "an appellate court's authority to look beyond the case as it stands on appeal."[39] On appeal "we examine the action before us in its present form," with no consideration given to "the possibility of future amendments that a trial court *may* in its discretion allow or disallow."[40] The Richardses' only requests for relief were specific performance of a real estate contract and title to the disputed property. Because that relief was impossible to grant, and we could not consider other relief, their case was moot.

¶29 The facts of *Richards* are sufficiently analogous to the present case to control the mootness question here. Like the Richardses, the Grewals lost a quiet title dispute in district court. Like the Richardses, the Grewals failed to post a supersedeas bond and obtain a stay. Like the Baums, JMF sold the contested property to a third-party bona fide purchaser. And like the Richardses, the Grewals did not assert a claim for monetary damages that would allow us to reach the merits of their arguments on appeal. Because our ruling could not affect the rights of the litigants regarding the title to the Station, the Grewals' challenges to that part of the district court's judgment are moot. Accordingly, we dismiss the Grewals' appeal in part.

---

[37] *Id.*

[38] *Id.* at 722.

[39] *Id.*

[40] *Id.* at 721–22. It is also doubtful whether the trial court would, or even could, have invoked these rules. *See, e.g.*, UTAH R. CIV. P. 15 (limiting when and how pleadings may be amended); *Combe v. Warren's Fam. Drive-Inns, Inc.*, 680 P.2d 733, 735 (Utah 1984) ("Although Rule [54(c)] permits relief on grounds not pleaded, that rule does not go so far as to authorize the granting of relief on issues neither raised nor tried.").

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY AWARDING ATTORNEY FEES

¶30 In its motion for attorney fees, JMF argued that it was entitled to recover fees under both the reciprocal attorney fees statute[41] and the PWAA.[42] The Grewals did not contest the applicability of the two statutes but instead argued that JMF hadn't satisfied the criteria to justify the discretionary award of fees under either of them. The district court agreed with JMF and cited both the reciprocal fees statute and the PWAA as independent bases for its award of fees.

¶31 Unlike their challenges to the district court's grant of summary judgment, the Grewals' challenge to the district court's award of attorney fees is not moot. An issue on appeal is moot when "there remains no meaningful relief that this court could offer."[43] While the dispute about the title to the Station was moot for the reasons listed above,[44] the relief that the Grewals request in regard to the attorney fees award—vacating the award of fees to JMF and awarding fees instead to the Grewals—could still be granted.

¶32 The Grewals' arguments on appeal mirror those that they raised before the district court: conceding that the statutes apply but contending that the district court erred by awarding fees under them. We have our doubts about whether either statute applies to this case.[45] But because the Grewals concede the issue, we consider

---

[41] UTAH CODE § 78B-5-826.

[42] *Id.* § 73-29-204(9).

[43] *Utah Transit Auth. v. Loc. 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 15, 289 P.3d 582.

[44] *See supra* ¶ 29.

[45] JMF was not a party to the Deed, and it is the attorney fees provision contained within that document that would trigger the reciprocal fees statute. Prior cases on the reciprocal fees statute, such as *Hooban v. Unicity International, Inc.*, seem to leave open the question of whether the statute would have applied in this precise factual scenario. *See* 2012 UT 40, ¶ 12, 285 P.3d 766.

It is also unclear whether the PWAA applies, as that statute provides for attorney fees only in relation to a quiet title action

(continued . . .)

only whether the district court's award of fees under either statute was an abuse of discretion.

¶33 We begin with the reciprocal fees statute. The Grewals' argument on this point rests on language from one of our previous cases on the matter: *Bilanzich v. Lonetti*.[46]

¶34 In *Bilanzich*, we held that the reciprocal fees statute "was designed to create a level playing field for parties to a contractual dispute."[47] The statute does so by "allowing both parties to recover fees where only one party may assert such a right under contract, remedying the unequal allocation of litigation risks built into many contracts of adhesion."[48] As a result, district courts "should award fees liberally" under the statute "where pursuing or defending an action results in an unequal exposure to the risk of contractual liability for attorney fees."[49] But we also noted in *Bilanzich* that lower courts could "inform their decisions with other equitable principles" and "should avoid using this statute to expose one party to a disproportionate risk of paying attorney fees that would result in a windfall to the other party."[50]

¶35 We note at the outset that the proper meaning of *Bilanzich*'s windfall language is not immediately clear. That case instructs courts to avoid awarding fees if doing so would create a disproportionate risk of a windfall.[51] But an attorney fees award is usually the final ordered monetary transfer in a case, coming after a lower court has determined which party has prevailed and what damages are owed.[52] In that posture, an award of attorney fees cannot create a risk of a windfall; it either is a windfall or it isn't.

---

regarding "the existence of a right to public recreational access" to a body of water. *See* UTAH CODE § 73-29-204(1)(a).

[46] 2007 UT 26, 160 P.3d 1041.

[47] *Id.* ¶ 18 (cleaned up).

[48] *Id.*

[49] *Id.* ¶ 19.

[50] *Id.* ¶ 20.

[51] *Id.*

[52] *See* UTAH CODE § 78B-5-826 (allowing an award of fees to the "party that prevails in a civil action").

¶36 That brings up another question: what is a windfall in this context? The Grewals suggest that a windfall occurs when the result of a lawsuit is inherently inequitable, such that requiring the losing party to also pay the prevailing party's attorney fees "adds insult to injury." But as JMF correctly points out, this interpretation quickly runs aground. The prevailing party in a case is inevitably the "winner" in some sense. Limiting that party's recovery because they have already "won" enough is contrary to the purpose behind contractual attorney fees.[53]

¶37 The better interpretation is to read *Bilanzich* as warning courts against awarding an unreasonable amount of attorney fees. Avoiding this sort of windfall has been a central concern of many of our earlier cases on the topic.[54] Indeed, the only other time we have cautioned against awarding "a windfall profit" in the form of attorney fees was in that context.[55] And this interpretation also fits well with the surrounding passage in *Bilanzich* itself. That case's admonition to avoid a windfall was made "in the spirit of leveling the playing field."[56] Such a leveling naturally precludes allowing the prevailing party to recover an unreasonable amount of attorney fees.

¶38 Given that interpretation of *Bilanzich*, the Grewals' claim that a windfall occurred falls short. Their position is essentially that the district court, by awarding title of the Station to JMF based on a statute of limitations defense, allowed JMF to receive ownership

---

[53] *See Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 51, 1 P.3d 1095 (noting that "the basic purpose of attorney fees is to indemnify the prevailing party").

[54] *See, e.g.*, *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1375 (Utah 1996) (declining to award attorney fees to a pro se litigant because it would "give[] rise to the danger of creating a cottage industry for claimants as a way to generate fees rather than to vindicate personal claims" (cleaned up)); *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶¶ 51–63, 308 P.3d 424 (discussing the reasonableness of a fees award in terms of the hourly rate, additional fees, and number of hours billed).

[55] *See Softsolutions*, 2000 UT 46, ¶ 51 (holding that attorney fees should not "punish the losing party by allowing the winner a windfall profit").

[56] *Bilanzich*, 2007 UT 26, ¶ 20.

of the Station without actually paying for it. Awarding JMF its attorney fees in addition would "add insult to injury."

¶39 This argument rests on the assumption that there is something inherently inequitable about prevailing on a statute of limitations defense. That assumption is questionable. The "core purpose" of a statute of limitations is not to reward defendants, but rather "to compel exercise of a right within a reasonable time to avoid stale claims, loss of evidence, and faded memories."[57] Given that context, "for purposes of awarding attorney fees under a contract, it is doubtful that equity requires treating a victory based on a statute of limitations differently from a victory based on an adjudication of the merits of the underlying claim."[58]

¶40 In short, the Grewals have not shown that awarding attorney fees to JMF created the sort of windfall that *Bilanzich* cautions against. Accordingly, we hold that the district court's decision on that matter was not an abuse of discretion,[59] and we do not need to reach the issue of whether fees would also have been available under the PWAA.

¶41 JMF also requests its attorney fees incurred in defending against the Grewals' appeal. "[C]onsistent with our settled view that a party who received an award of attorney fees below is entitled to their fees on appeal,"[60] we hold that JMF is entitled to recover its reasonable fees incurred on appeal.

---

[57] *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 332 (Utah 1997).

[58] *Federated Cap. Corp. v. Haner*, 2015 UT App 132, ¶ 18, 351 P.3d 816.

[59] We pause here to acknowledge that the transcript and audio recording of the hearing in which the district court orally awarded fees to JMF are incomplete. Frustratingly, the apparent break in audio comes just as the court begins to explain why fees were appropriate. But where "crucial matters are not included in the record, the missing portions are presumed to support the action of the [district] court." *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278 (cleaned up).

[60] *Glew v. Ohio Sav. Bank*, 2007 UT 56, 181 P.3d 791, 798 (order granting attorney fees on appeal); *see also Mmgt. Servs. Corp. v. Dev. Assocs.*, 617 P.2d 406, 409 (Utah 1980).

## CONCLUSION

¶42 The Grewals raise two issues. The first issue concerns the validity of the district court's judgment quieting title to the Station in JMF. Because JMF has since sold the Station to a third party, and because the Grewals did not counterclaim for monetary damages, our decision in *Richards v. Baum* mandates a holding that this issue is moot. As the Grewals did not argue that any exception to the mootness doctrine applies, we grant JMF's motion to dismiss the appeal of this issue.

¶43 The Grewals' second issue concerns the district court's judgment awarding attorney fees to JMF under the PWAA and the reciprocal attorney fees statute. We have doubts about the applicability of either statute to this case. But assuming, as we must, that they apply, the district court did not abuse its discretion by awarding fees under the latter. Accordingly, we affirm the grant of attorney fees. JMF is also entitled to recover its reasonable fees incurred defending against this appeal, and we remand to the district court for a determination of that amount.

———————