IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| CCW Ranch, LLC, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20090776-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 27, 2012) |
| Chris Nielsen and Sunny J. Nielsen, | ) | |
| | ) | 2012 UT App 205 |
| Defendants and Appellees. | ) | |

-----

Seventh District, Castle Dale Department, 060700003
The Honorable Douglas B. Thomas

Attorneys:     Joane Pappas White, Price, for Appellant
               Michael D. Olsen, Castle Dale, for Appellees

-----

Before Judges Orme, Roth, and Christiansen.

ORME, Judge:

¶1     This case arises as a result of a dispute regarding fencing along boundaries shared by Plaintiff CCW Ranch and Defendants Chris and Sunny Nielsen.  The parties at various times have insisted or denied that they had an agreement that each would take responsibility for rebuilding or repairing one of the sections of fence along their two common borders. Plaintiff was once the main proponent of the idea that such an agreement had been reached but now resists that proposition.  Defendants were earlier lukewarm on the notion that there was an agreement, but, at least given the totality of the trial court's disposition, now endorse the idea.  Plaintiff is adamant that Defendants breached any such agreement that there might have been, either by their significant

delay in beginning their part of the fence construction or by doing the work in an incomplete or shoddy fashion. On alternative theories that there was no contract or, if there was, it was breached, Plaintiff also sought to recover half the cost of construction of proper fencing along its boundaries with Defendants, per Plaintiff's interpretation of Utah Code section 4-26-5.1. *See* Utah Code Ann. § 4-26-5.1(3) (2006).

¶2 Following a bench trial, during which the court heard conflicting evidence and made its credibility assessments, the court entered detailed findings of fact. It concluded that the parties had an agreement for refurbishing the fences in question and that each party had fulfilled its obligations pursuant to the agreement. While the south fence work did not satisfy government standards and both the north and south fences had problems with moisture and "sway," the fences were, according to the trial court, on par with many others in the area and "appear[ed] to be doing the job [they were] intended to do," namely, keeping cattle where they belonged.

¶3 While Plaintiff has pointed to evidence in the record that could have supported findings more favorable to Plaintiff, it has not demonstrated that the findings entered by the trial court are clearly erroneous, i.e., that they lack adequate evidentiary support. *See Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177 ("A trial court's findings of fact will not be set aside unless clearly erroneous. . . . [T]o establish that a particular finding of fact is clearly erroneous, [a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence.") (second alteration in original) (citation and internal quotation marks omitted). Accordingly, we decline to disturb the findings made by the trial court and take them as our starting point in considering Plaintiff's legal arguments.[1] *See id. See also Kimball v. Kimball*, 2009

---

1. We do not consider the affidavit submitted while the appeal was pending, as it was not part of the record before the trial court, and our review is limited to the record as developed in the trial court. *See Osburn v. Bott*, 2011 UT App 138, ¶ 5 n.2, 257 P.3d 1028. And we express no opinion on the points made in section I of Plaintiff's brief, which, while interesting as a summary of legislation and policy concerning fencing, does not articulate an appellate argument as such, but rather, in the words of the brief itself, sets forth "historical background" within which "the case at bar arises."

In addition, Plaintiff mentions the constitutionality of the applicable statute in the

(continued...)

UT App 233, ¶ 20 n.5, 217 P.3d 733 ("No matter what contrary facts might have been found from all the evidence, our deference to the trial court's pre-eminent role as fact-finder requires us to take the findings of fact as our starting point, unless particular findings have been shown, in the course of an appellant's meeting the marshaling requirement, to lack legally adequate evidentiary support.").

¶4 Given those findings, we do not agree with Plaintiff's primary argument that the agreement was too vague or indefinite to be enforceable. The section of fence for which each party was responsible was always clearly understood. And each party understood that they would bear the costs attributable to the fence for which that party had responsibility. The parties did not have an express understanding about the materials to be used but each assumed, as evidenced by their subsequent course of conduct, that the reconstructed fence would have to "hold up," that it would be "a good fence . . . common with the other fences found around the County," and that the repaired or rebuilt fence "would be adequate to keep the cattle enclosed in the respective owners' property."

---

1. (...continued)
sections of its brief titled "Issues Presented" and "Summary of the Argument" but, except for those fleeting references, Plaintiff does not develop any constitutional argument. Accordingly, we do not address the statute's constitutionality. *See Russell v. Thomas*, 2000 UT App 82, ¶ 9 n.9, 999 P.2d 1244.

Finally, regarding Defendants' testimony that they no longer own any interest in the property, Plaintiff raises contradictory arguments. On the one hand, Plaintiff suggests that any effort on Defendants' part to distance themselves from the trial court's judgment by reason of their sale of the property to family members should be unavailing. We express no opinion on the effect of this intrafamily sale other than to note that it appears Defendants have not actually sought the escape route Plaintiff seeks to foreclose. On the other hand, Plaintiff contends that we should declare moot any issue about "the future costs associated with the North boundary fence . . . because of a change in the ownership of [Defendants'] parcel." We note that rule 25(c) of the Utah Rules of Civil Procedure provides that "[i]n case of any transfer of interest, the action may be continued by or against the original party," unless the parties satisfy certain procedural requirements outlined in the rule. *See* Utah R. Civ. P. 25(c). Those requirements have not been met.

¶5      Second, we cannot agree that Defendants' delay in performing constituted a breach as a matter of law.  There was no explicit agreement about when each party had to perform, so the law implies a reasonable time for performance.  *See Cooper v. Deseret Fed. Sav. & Loan Ass'n*, 757 P.2d 483, 485 (Utah Ct. App. 1988).  That the time of Defendants' performance was not unreasonably late is implicit in the trial court's finding number ten[2] and is buttressed by the fact, as acknowledged in the testimony of Plaintiff's principal, that although Plaintiff started its work long before Defendants, Defendants finished their work first.

¶6      Third, Plaintiff's argument that Defendant breached the covenant of good faith and fair dealing, which is implied in all Utah contracts, *see Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193, has no basis in the facts as found by the trial court, *see generally Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶¶ 9–10, 266 P.3d 814 (describing the limits of a covenant of good faith and fair dealing and the "high bar" required to demonstrate the existence of such a covenant).

¶7      Plaintiff's final argument is that the trial court's allocation of responsibility for future maintenance expenses is at odds with the governing statute.  Both sides agree that the cost of future maintenance of the fences is governed by section 4-26-5.1(4) of the Utah Code, which provides that "[t]he cost of the maintenance of the fence shall also be apportioned between each party based upon the amount of land enclosed."  Utah Code Ann. § 4-26-5.1(4) (2006).  However, Plaintiff contends that the trial court should determine the "amount of land enclosed" by looking at the "lineal feet of boundary" of each parcel.  Defendants, on the other hand, agree with the trial court's calculations, which were based on the acreage of land enclosed by each landowner's fencing of which the boundary fences were a part.

¶8      "[A] trial court's interpretation of a statute is a question of law that we review for correctness."  *Blackner v. Department of Transp.*, 2002 UT 44, ¶ 8, 48 P.3d 949.  We interpret statutes according to their plain meaning and "need not look beyond the plain language unless we find some ambiguity."  *State v. MacGuire*, 2004 UT 4, ¶ 15, 84 P.3d 1171 (citation and internal quotation marks omitted).

---

2. Finding number ten provides:  "Plaintiff began work on the South fence fairly soon after the telephone conversation.  Defendant did not commence serious work on his fence for some time after the telephone conversation."

¶9 The statute in issue is by no means a model of precise drafting. We note that it is limited, as a practical matter, to rural areas. *See* Utah Code Ann. § 4-26-5.1(1)(b) (defining a qualified landowner as a private landowner whose land is used for grazing livestock and is land that qualifies as a "conservation easement" or is "in agricultural use"). In that context, it appears to be designed to allocate the responsibility for repairs based not on shared fence frontage, as may be the custom in urban neighborhoods, but on the amount of land enclosed, i.e., the acreage belonging to each landowner that is within the enclosure of which the boundary fence is a part.[3] As the trial court noted, this method assigns a larger share of maintenance costs to the landowner who benefits most by the fence, as determined by comparing the relative size of the landowners' respective enclosures, so this construction of the provision is not absurd or illogical. *See generally LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135 (explaining that Utah courts construe statutes as written unless such an interpretation works an absurd result). Plaintiff has not persuaded us that the Legislature had some other result in mind when it used the phrase "amount of land enclosed."[4] Accordingly, we affirm the district court's methodology for allocating future maintenance costs.[5]

---

3. This interpretation accords with the common usage of the terms. "Enclose" is defined as "to close in: surround[.]" Webster's Third New International Dictionary 746 (1961). "Enclosed land" is "[l]and that is actually enclosed and surrounded by fences." Black's Law Dictionary 881 (9th ed. 2009).

4. We note that this method of apportioning responsibility for future maintenance costs is consistent with section 4-26-5 of the Utah Code, which deals with partition fences as well as "fence enclosures." *See* Utah Code Ann. § 4-26-5 (Supp. 2011). The rule of thumb in that statute for allocating maintenance costs is also "based upon the amount of land enclosed." *Id.*

5. Plaintiff's argument that the trial court used "an incorrect mathematical determination" reiterates the argument that the court used the wrong methodology when it considered acreage enclosed rather than "lineal feet of boundary of a parcel," an argument we have rejected. To the extent that the court may have made actual mathematical errors when calculating each party's share of costs, we are not persuaded that the errors, if any, were significant. We note, for example, that the trial court's finding of fact number twenty-seven refers to Defendants' proportionate share as .385.

(continued...)

¶10    Affirmed.

_____

Gregory K. Orme, Judge

-----

¶11    WE CONCUR:

_____

Stephen L. Roth, Judge

_____

Michele M. Christiansen, Judge

_____

5.  (...continued)
However, the court correctly stated later in the same finding that Defendants' share was 33.84%.