**2026 UT App 65**

# THE UTAH COURT OF APPEALS

TRAVIS I. NIELSEN AND BRITTNI L. NIELSEN,
Appellants,
*v.*
ELAM TERRELL CRONQUIST, LYLE KIM CRONQUIST SR.,
AND BERNIECE W. CRONQUIST,
Appellees.

Amended Opinion[1]
No. 20240680-CA
Filed April 23, 2026

First District Court, Logan Department
The Honorable Angela Fonnesbeck
The Honorable Lynn W. Davis
No. 210100168

Wayne K. Caldwell, Aubri O. Thomas, Wayman
Stodart, and Arther P. Hart, Attorneys for Appellants

Samuel A. Goble, Erin E. Byington, and
Jill L. Sanders, Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Amended Opinion, in
which JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

---

1. This amended opinion replaces the opinion that was issued on December 26, 2025. In response to a petition for rehearing filed by the Nielsens, and after reviewing invited supplemental briefs associated with that petition, we have added paragraph 17 to our factual recitation, and we have revised Part I of this opinion. To that extent, we grant the petition for rehearing. But in all other respects, that petition is denied. Indeed, all other parts of our opinion, as well as our ultimate conclusions, stand unchanged.

HARRIS, Judge:

¶1    Travis I. Nielsen and Brittni L. Nielsen (the Nielsens) lived on a parcel of land that shared a boundary with two other parcels owned by members of their extended family: one parcel owned by Elam Terrell Cronquist (Terry) and another parcel owned by Lyle Kim Cronquist Sr. (Kim) and Berniece W. Cronquist (Berniece) (Terry, Kim, and Berniece are herein collectively referred to as "the Cronquists").[2] In 2021, a dispute between the Nielsens and the Cronquists ignited a lawsuit involving over a dozen claims and counterclaims, including claims for quiet title, boundary by acquiescence, conversion of personal property, interference with water rights, nuisance, trespass, and attorney fees. After a bench trial, the court ruled in favor of the Cronquists on all claims and awarded attorney fees on some of those claims.

¶2    The Nielsens appeal, asserting that the trial court's findings of fact and conclusions of law were erroneous in various respects. But during the pendency of this appeal, the Nielsens sold their parcel, an eventuality that renders moot all of the Nielsens' title- and boundary-related claims. As for the Nielsens' remaining appellate challenges, we affirm in part and reverse in part, and we remand this case to the trial court for further proceedings.

BACKGROUND[3]

¶3    The three parcels of land central to this case were once a single parcel. The owners of this single parcel—Ollie and Wilda

---

2. Because several parties share the same last name, we follow our usual practice of referring to them by their first or preferred names, with no disrespect intended by the apparent informality.

3. "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings; we present

(continued…)

Cronquist—successfully applied to subdivide it in 1997. This subdivision resulted in the creation of multiple lots, including the three adjacent parcels relevant here: the Nielsens' parcel, Terry's parcel (situated southwest of the Nielsens' parcel), and Kim and Berniece's parcel (to the southeast). At the time of the subdivision in 1997, a survey was conducted and a plat map was recorded, outlining the boundaries of these three parcels.

¶4    Between Terry's parcel and Kim and Berniece's parcel lay an access road that stretched from the Nielsens' parcel southward, connecting to Smithfield Canyon Road. This access road was situated in a fifty-foot-wide corridor that belonged to the Nielsens' parcel in fee simple, without any restrictions, covenants, or easements recorded on the Nielsens' property deed. Sometime before the subdivision of parcels, a fence was installed along the west side of the access road, separating the road from Terry's parcel. On the east side of the access road, Kim and Berniece maintained a lawn, sprinklers, and a septic system from their house up to the access road and had done so since at least the subdivision in 1997.

¶5    Aside from the shared boundary lines, the Nielsens' parcel also shared water lines with Kim and Berniece's parcel. The Nielsens' parcel featured a retention pond, which was supplied with water from a source called "Swamp Springs," where "all parties enjoy[ed] established water rights." From this retention pond, two lines extended to Kim and Berniece's parcel, one providing water for irrigation and the other providing water to a horse trough inside their corral. The Nielsens' parcel also featured an above-ground electric water pump, which pulled culinary water from a nearby source called "Miles Spring" to the Nielsens' home. From the Nielsens' parcel, a water line extended to Kim and Berniece's parcel, providing culinary water to their home.

---

additional evidence only as necessary to understand the issues on appeal." *State v. Sparling*, 2024 UT App 59, n.1, 549 P.3d 86 (cleaned up), *cert. denied*, 554 P.3d 1096 (Utah 2024).

This water line existed when the Nielsens purchased their parcel in 2018, and soon thereafter, Berniece began making payments to the Nielsens for the electricity required to pump the Miles Spring culinary water to Kim and Berniece's home.

¶6 Near the northern boundary of Terry's parcel (adjacent to the Nielsens' parcel), there is an open-sided shed that—all parties agree—was primarily located on the Nielsens' parcel according to the plat map. Terry's son, Destry Cronquist, provided sheet metal for the shed's roof, and he left some additional sheet metal next to the shed, located at least partially on the Nielsens' parcel. At some point, Travis transported the spare sheet metal to another property and refused to return it to either Destry or Terry.

¶7 By January 2021, the Nielsens were considering selling their property. Around this time, disputes arose regarding the boundaries between the Nielsens' parcel and the other two parcels. Specifically, the Nielsens claimed that the fence on the west side of the access road (alongside Terry's parcel) encroached on their parcel, and that Kim and Berniece's maintenance of the lawn and septic system on the east side of the access road also encroached on their parcel. In addition to the location of the boundaries along the access road, the parties disputed the location of the southern boundary of the Nielsens' parcel—from the north end of the access road westward along Terry's parcel and eastward along Kim and Berniece's parcel.

¶8 Eventually, the Nielsens filed suit against the Cronquists, seeking to quiet title to their parcel's boundaries. After the suit was filed, Travis disconnected the water line to Kim and Berniece's horse trough, and as a result, their horses went without water for four days. Travis also "intermittently" turned off the valve controlling the water connection to Kim and Berniece's irrigation line. The Nielsens also set up cameras around their property and recorded interactions between the parties.

¶9 The Cronquists answered the Nielsens' complaint and, in addition, filed counterclaims of their own. The counterclaims included causes of action for boundary by acquiescence as well as various tort claims, including a conversion claim for the sheet metal and nuisance claims alleging that the Nielsens interfered with Kim and Berniece's water rights in both Swamp Springs and Miles Spring. In their answer to the counterclaims, the Nielsens alleged that the right to use culinary water from Miles Spring was "granted only to [the Nielsens] through Smithfield City" and that Kim and Berniece had "been illegally diverting" water "to their own homes for their own use." The Nielsens then filed an amended complaint, which, among other things, added a claim for conversion against Kim and Berniece for "wrongfully install[ing] water lines" to obtain water from Miles Spring.

¶10 By stipulation of the parties, the matter was reassigned to a senior judge who presided over a five-day bench trial. After receiving evidence and hearing argument, the court issued written findings of fact and conclusions of law. As relevant to this appeal, the court ruled in favor of the Cronquists on their boundary-by-acquiescence claims.[4] As for Terry's conversion claim (for the sheet metal), the court found that Destry "testified that the metal belonged to him and he gave permission for its use on" Terry's shed. And the court found that Travis had taken the sheet metal. Yet the court ordered that "the metal be returned to Terry who was the intended beneficiary of the metal." No other findings were made as to the ownership of the spare sheet metal.

¶11 The court also ruled on the water claims. As for Kim and Berniece's claim of interference with a water right, the court concluded that Travis had "wrongfully interfered" with Kim and Berniece's Swamp Springs water by "cutting and pulling water lines to [Kim and Berniece's] horse trough and arbitrarily shutting off the water valve" to their irrigation. The court then rejected the

---

4. For the reasons discussed below in Part I, we need not relay the trial court's analysis on the boundary-related claims.

Nielsens' conversion claim involving the Miles Spring water, finding that the claim was "without merit" and "improperly motivated." The court explained that the Nielsens "purchased [their parcel] subject to sharing a [one-inch] pipe from Miles Spring for culinary water" and that the Nielsens received payments for the electricity to pump the Miles Spring water to Kim and Berniece's parcel for more than three years. The court further observed that the Nielsens "offered no explanation why [Kim and Berniece] would suddenly have no right to their culinary water." Thus, the court concluded that the Nielsens' conversion claim was "unsupported by any reasonable belief," "contradicted by [the Nielsens'] own testimony and actions," and "improperly motivated to blame" Kim and Berniece for the Nielsens' "participation in the Miles Spring water system."

¶12 With regard to these water claims, the Cronquists requested attorney fees. Specifically, they sought fees for the interference claim under a statute that entitles the "prevailing party in a civil action . . . to collect reasonable costs and attorney fees, if that action is brought . . . for injuries caused by a diversion of water in violation of an existing water right." *See* Utah Code § 73-2-28. And they sought fees for defending against the Nielsens' conversion of water claim under Utah's bad-faith litigation statute, which entitles the prevailing party to fees where a claim is found to be "without merit and not brought or asserted in good faith." *See id.* § 78B-5-825(1).

¶13 In support of their attorney fees claims, the Cronquists' counsel submitted an affidavit as well as time records of the attorneys' work on the case, all of which set forth the hours spent, the hourly rates, and descriptions of the tasks performed. For some of the time entries, the amount requested was one-third of the total amount billed for the task, while other entries were requested at 100%. In their motion for fees, the Cronquists explained that they sought 100% "of the billing entries that were only related to water" but only "33%" of entries "that were related to all of the claims for the case," and that the "33% calculation

[was] based" in part on "the amount of fact preparation" attributable to the water claims "versus the rest of the claims in the case." After reviewing the motion, the court granted the request and specifically found that the Cronquists had "made reasonable efforts in calculating attorney[] fees relating to both" the interference with a water right claim and the conversion claim.

¶14    Later, the Nielsens appealed. A few days after the Nielsens filed their opening brief on appeal, the Cronquists filed a suggestion of mootness and motion to dismiss. In that motion, they asserted that all boundary-related claims had become moot because the Nielsens had sold their parcel to a third party during the pendency of the appeal and therefore no longer had any legal interest in those specific claims. The Cronquists also pointed out that no effort had been made to substitute in the third-party purchaser of the Nielsens' parcel as a party to this appeal.

¶15    In response, the Nielsens acknowledged that they had sold the parcel, but they nevertheless opposed the motion to dismiss the appeal entirely. They first argued that "the property [was] not integral to all of the issues on appeal or the parties' claims," asserting specifically that they retained an interest in the conversion and nuisance claims, as well as the attorney fees issues. As for the boundary-related claims, the Nielsens argued that rule 38 of the Utah Rules of Appellate Procedure "allows for the substitution of parties when necessary but does not outright require it." The Nielsens thus posited that "until a court is presented [with] a motion for substitution and that motion is granted, the original party remains in that matter as the party in question," and they asserted that the third party's purchase of their parcel did "not automatically render the appeal moot or deprive the court of jurisdiction." The Nielsens further argued that the sale of their parcel "in no way rendered relief impossible," because the third-party purchaser had, "for those claims strictly tied to the land, become a true successor in interest as any relief that would have been afforded to [the Nielsens] [was] now properly afforded to [the third-party purchaser]."

¶16 We deferred our ruling on the suggestion of mootness "pending plenary consideration of the appeal," and the parties filed the remaining briefs according to the briefing schedule.

¶17 We issued our original opinion in December 2025. In that opinion, we concluded (among other things) that the Nielsens' title- and boundary-related claims had been rendered moot. After issuance of our original opinion, the Nielsens filed a petition for rehearing, asking us to reassess the mootness issue. At that juncture, and for the first time, they filed a motion to substitute, asking for leave to substitute the third-party purchaser into the case as the appellant. And they filed a motion asking us to reinstate the appeal on the title- and boundary-related claims.

ISSUES AND STANDARDS OF REVIEW

¶18 In this appeal, the Nielsens assert that the trial court committed various errors in its post-trial ruling. With respect to many of these alleged errors, the Cronquists have asserted mootness as grounds for dismissal of the appeal. If an issue is moot, we "lack judicial power to address" the merits of the argument. *In re M.S.*, 2023 UT App 74, ¶ 22, 533 P.3d 859. Because this mootness issue "arises for the first time here on review, our decision is not governed by any standard of review, and we decide the matter as a question of law in the first instance." *Grewal v. Junction Market Fairview, LC*, 2024 UT 20, ¶ 12, 554 P.3d 863 (cleaned up).

¶19 The Nielsens also challenge the trial court's findings and conclusions regarding the Cronquists' sheet-metal conversion counterclaim, asserting that the court erred in awarding relief to a non-party in the case by ordering the return of the spare sheet metal to Terry despite evidence that Destry was the owner. "We review the trial court's legal conclusions for correctness, granting them no particular deference," but "we review the trial court's findings of fact for clear error, reversing only where the finding is

against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Covey v. Covey*, 2003 UT App 380, ¶ 17, 80 P.3d 553 (cleaned up).

¶20    Finally, the Nielsens challenge the reasonableness of the attorney fees awarded to the Cronquists. "A court's decision regarding the reasonableness of an attorney fee award is reviewed deferentially, for patent error or clear abuse of discretion." *Zion Village Resort LLC v. Pro Curb U.S.A. LLC*, 2020 UT App 167, ¶ 22, 480 P.3d 1055 (cleaned up).

ANALYSIS

I. Mootness: The Title- and Boundary-Related Claims

¶21    At trial, this case centered on boundary disputes between the Nielsens and the Cronquists. But the Nielsens no longer own the property central to those particular disputes and therefore no longer have any legal interest in the location of that parcel's boundaries. Thus, any relief we could afford the Nielsens—the parties claiming error here—would have no effect. For these reasons, we agree with the Cronquists that the Nielsens' appellate claims—including any associated evidentiary challenges—related to their former parcel's boundaries are moot, and we therefore dismiss the Nielsens' appeal as to those issues.

¶22    We start with the premise that, as a general rule, lawsuits must be brought and maintained by the party with the interest in the matter at hand. This general rule is what motivates our jurisprudence regarding the concepts of standing and mootness, and it is what motivates our procedural requirements about real parties in interest. *See* Utah R. Civ. P. 17(a).

¶23    "Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Laws v. Grayeyes*, 2021 UT 59, ¶ 27, 498 P.3d 410 (cleaned up). "Although the Utah Constitution—unlike the federal

constitution—does not contain a 'case or controversy' requirement and therefore 'includes no express limitation' on Utah courts' jurisdiction, our supreme court has stated that the Utah Constitution 'nevertheless mandates certain standing requirements, which emanate from the principle of separation of powers.'" *Erda Cmty. Ass'n v. Grantsville City*, 2024 UT App 126, ¶ 21, 558 P.3d 91 (quoting *Laws*, 2021 UT 59, ¶ 33). "Our traditional standing requirements mimic those imposed by the United States Supreme Court's interpretation of the federal constitution." *Id.* ¶ 23 (cleaned up). And these requirements "subsist[] through all stages" of a case, including both the "trial and appellate" stages. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (cleaned up). As a general matter, and in the absence of a rule or statute to the contrary, to satisfy standing requirements, "parties must continue to have a personal stake in the outcome of the lawsuit" at all stages of the lawsuit. *Id.* (cleaned up).

¶24 At the beginning of a case, in order to be deemed to have standing to sue, plaintiffs must "allege that they have suffered or will suffer some distinct and palpable injury that gives them a personal stake in the outcome of the legal dispute." *Harman v. 105 Partners, LLC*, 2024 UT App 109, ¶ 40, 556 P.3d 669 (cleaned up). Standing principles dictate that "a party may generally assert only his or her own rights and cannot raise the claims of third parties who are not before the court." *Id.* (cleaned up). These same principles are reflected in rule 17(a) of the Utah Rules of Civil Procedure, which dictates that "[e]very action shall be prosecuted in the name of the real party in interest." The purpose of this requirement "is to allow defendants the right to have a cause of action prosecuted by the real party in interest in order for the judgment to preclude any action on the same demand by another." *Green v. Louder*, 2001 UT 62, ¶ 43, 29 P.3d 638 (cleaned up); *see also* 6A Wright & Miller's Federal Practice & Procedure § 1541 (3d ed. 2026 update) (stating that rule 17 of the Federal Rules of Civil Procedure, which contains a real-party-in-interest requirement similar to Utah's rule 17, "performs the useful function of protecting individuals from harassment and multiple

suits by persons who would not be bound by the principles of claim preclusion if they were not prevented from bringing subsequent actions by a real-party-in-interest rule"). Thus, a lawsuit brought in the name of the wrong party is subject to dismissal on both rule-based real-party-in-interest grounds as well as jurisdiction-based standing grounds.

¶25    But once a lawsuit has been initiated by the correct party, our rules of civil procedure allow that party to continue to litigate the suit through trial even if—during the pendency of the proceedings in the trial court—that party transfers its interest in the lawsuit. The applicable rule states that, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Utah R. Civ. P. 25(c). This rule "is designed to allow an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring the initiation of an entirely new lawsuit." *ELCA Enters., Inc. v. SISCO Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995) (cleaned up) (applying rule 25(c) of the Federal Rules of Civil Procedure, which is substantively similar to Utah's rule). The rule "promote[s] order and help[s] avoid confusion," *see Trapnell & Assocs. v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 44, 469 P.3d 989, and it encourages efficiency by allowing lawsuits that may be in their advanced stages to continue without the necessity of substitution (or even dismissal and re-filing) by the party who obtained the interest.

¶26    And a "transfer of interest," as envisioned by rule 25(c), includes not just transfers of the right to sue—the chose in action—but also transfers of the underlying contract or property interest that gave rise to the lawsuit in the first place. *See CCW Ranch, LLC v. Nielsen*, 2012 UT App 205, ¶ 3 n.1, 283 P.3d 1072 (noting that an "intrafamily sale" of the real property, during the pendency of the trial court proceedings, was the sort of transfer that implicates rule 25(c)); *see also Crown Point Partners LLC v. Crown Point Plan Comm'n*, 275 F.R.D. 279, 280–82 (N.D. Ind. 2011)

(deeming a transfer of the real property at issue in the lawsuit to be the sort of transfer that implicates rule 25(c)).

¶27 Thus, had the Nielsens transferred the property during the pendency of the trial court proceedings, rule 25(c) would have applied, and—absent a court order, made upon motion, mandating a substitution of parties—they would have been able to continue prosecuting the lawsuit through trial, notwithstanding the fact that, after the transfer, they no longer had an interest in the property.

¶28 But the Nielsens didn't transfer the property during the pendency of the trial court proceedings; they transferred it after the case was final at the trial court level and after they had filed a notice of appeal in this court. And unfortunately for the Nielsens, rule 25(c) applies only to transfers of interest that occur during the pendency of trial court proceedings; it does not apply to transfers of interest that occur while a case is on appeal. *See, e.g.*, Fed. R. Civ. P. 25 advisory committee's note to 1961 amendment ("As to substitution on appeal the rules of the appellate courts should be consulted."); 7C Wright & Miller's Federal Practice & Procedure § 1951 (3d ed. 2026 update) ("Rule 25 applies only to substitution in the district court. Substitution in an action pending in a court of appeals is governed by [the] Appellate Rule[s].").

¶29 On appeal, such matters are governed by our rules of appellate procedure; in this instance, the one that's applicable is rule 38. *See Trapnell*, 2020 UT 44, ¶ 70 & n.10 (applying rule 38 of the Utah Rules of Appellate Procedure in assessing an argument about a party's entitlement to substitution on appeal). That rule has four subsections, each of which discusses substitution of parties in appellate cases in various settings. *See* Utah R. App. P. 38 (subsection (a) covers the death of a party, subsection (b) covers incompetency, subsection (d) concerns public officers, and subsection (c)—a catch-all provision—governs "[s]ubstitution for other causes"). None of the four subsections expressly discusses transfers of interest; that is, there is no analogue, in our appellate

rules, to civil rule 25(c). Indeed, the parties agree that, of the four subsections in appellate rule 38, subsection (c) is the only one that has potential application here.

¶30    That subsection states that "[i]f substitution of a party is appropriate for any other reason [than those specifically stated in the rule], the court may substitute the party upon good cause shown." *Id.* R. 38(c). We are unaware of any Utah caselaw interpreting this subsection. And federal cases are of no help here; unlike rules 17 and 25 of the Utah Rules of Civil Procedure, where federal rules and Utah rules are similarly worded, there is no analogue to this subsection in the federal appellate rules. *See* Fed. R. App. P. 43(b) ("Substitution for a Reason Other Than Death. If a party needs to be substituted for any reason other than death, the procedure prescribed in [the death of a party subsection] applies."); *see also Jenco, LC v. Valderra Land Holdings, LLC*, 2025 UT 20, ¶ 26, 572 P.3d 381 (explaining that "to the extent Utah's rules and the federal rules are similarly worded, we at times turn to the federal rules and cases interpreting them for guidance," but noting that "where Utah's rule is materially different from the analogous federal rule, federal caselaw offers limited guidance" (cleaned up)).

¶31    We also note that, while the other subsections of appellate rule 38 appear to be drawn, at least in significant part, from the text of civil rule 25, *compare* Utah R. App. P. 38(a) (regarding death of a party), *with* Utah R. Civ. P. 25(a) (regarding death of a party); *compare* Utah R. App. P. 38(b) (regarding incompetency), *with* Utah R. Civ. P. 25(b) (regarding incompetency), the drafters of the appellate rule opted *not* to include a subsection regarding transfer of interest. "We interpret court rules, like statutes and administrative rules, according to their plain language." *In re C.D.S.*, 2023 UT 11, ¶ 25, 531 P.3d 217 (cleaned up); *see also Ross v. Ross*, 2019 UT App 104, ¶ 10, 447 P.3d 104 ("Our procedures for interpreting statutes and rules are the same: We do so according to our general rules of statutory construction." (cleaned up)). "In examining statutory language, we consider the relevant statute in

its entirety, construing each part or section in connection with every other part or section so as to produce a harmonious whole." *Vineyard Props. of Utah LLC v. RLS Constr. LLC*, 2021 UT App 144, ¶ 26, 505 P.3d 65 (cleaned up). Further, "we presume that the expression of one term should be interpreted as the exclusion of another, and we seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *State v. Stewart*, 2018 UT 24, ¶ 13, 438 P.3d 515 (cleaned up).

¶32 Applying these principles, we must view the differences between appellate rule 38(c) and civil rule 25(c) as intentional, and we must attempt to give those differences meaning. Rule 25(c) creates a rather unique circumstance: it changes ordinary rules regarding standing, mootness, and real parties in interest, and it provides that a party litigating a lawsuit may continue to do so even though it has transferred its interest in the matter in dispute. We consider rule 25(c) to constitute an exceptional departure from our usual standing requirements, and we are not willing to read that same exception into an appellate rule that—apparently by design—does not include the same language supporting the existence of that exception.[5]

---

5. We do not know why the drafters of appellate rule 38 chose not to include a section about transfers of interest. But it doesn't take much imagination to think of potential reasons the drafters might have had for wanting to return, on appeal, to first principles of standing and mootness (rather than continue with civil rule 25(c)'s exceptional provision). By the time the case reaches the appellate stage, the trial proceedings are over, and new tools— including civil rule 62 and appellate rule 8—are available to appellants who wish to maintain the trial-level status quo during the pendency of an appeal. *See* Utah R. Civ. P. 62 (stay of proceedings to enforce a judgment or order); Utah R. App. P. 8 (stay or injunction pending appeal). As always, if we have misperceived the drafters' intent in choosing the language of

(continued…)

¶33 And without an exception similar to the one extant in civil rule 25(c), ordinary standing and mootness principles apply. After all, these doctrines are "closely linked: ripeness and mootness easily could be seen as the time dimensions of standing." *McInnis-Misenor v. Maine Med. Center*, 319 F.3d 63, 69 (1st Cir. 2003) (cleaned up); *see also WildEarth Guardians v. Public Service Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) ("Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation; thus, courts have sometimes described mootness as 'the doctrine of standing set in a time frame.'" (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)); *accord Mathews v. Tooele County*, 2025 UT 30, ¶ 20, 573 P.3d 1276.

¶34 A case becomes moot if, "at any point" during the life of the case, "a change in circumstances eliminates the legal controversy between the parties." *Mathews*, 2025 UT 30, ¶ 20. Mootness inquiries often turn on whether "the relief requested [has been] rendered impossible or of no legal effect." *Transportation All. Bank v. International Confections Co.*, 2017 UT 55, ¶ 15, 423 P.3d 1171 (cleaned up). "Because the mootness doctrine largely turns on the continuing availability of the relief requested, Utah's mootness cases have commonly looked to the precise terms of the plaintiff's pleadings (whether it be the complaint or some other filing) to determine the nature of the requested relief." *Harman v. 105 Partners, LLC*, 2024 UT App 109, ¶ 26, 556 P.3d 669 (cleaned up).

¶35 Ordinarily, it is possible for an issue to become moot during the pendency of an appeal; this occurs when "during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *In re adoption of L.O.*, 2012 UT 23,

---

appellate rule 38, those drafters are of course free to amend the rule to incorporate principles from civil rule 25(c).

¶ 8, 282 P.3d 977 (cleaned up); *see also* 1A C.J.S. *Actions* § 76 (2026) ("If events that occur subsequent to the filing of a lawsuit or appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." (cleaned up)). As applicable here, it is possible for an appeal to be mooted when the real property at issue in the underlying lawsuit gets sold during the appellate process.

¶36    For instance, our supreme court has on two occasions held that the sale of real property during an appeal rendered the case moot. *See Grewal v. Junction Market Fairview, LC*, 2024 UT 20, ¶ 29, 554 P.3d 863; *Richards v. Baum*, 914 P.2d 719, 722 (Utah 1996). In *Richards*, buyers sued to enforce their right to purchase real property, but after receiving an adverse judgment, the buyers did not obtain a stay of the judgment pending appeal. *See* 914 P.2d at 722. And when the property was sold to a third-party purchaser during the appeal, there was nothing the appellate court could do to afford relief to the buyers/appellants. *See id.* (explaining that "the sole relief the [appellants] sought at trial was specific performance of a real estate contract and a decree quieting title to the property," yet "[b]ecause of their failure to obtain a stay pending [the] appeal, the property was lawfully sold to another" and thus "[n]o action which [the court] could . . . take would affect the litigants' rights to the property"). The court thus determined that the buyers' appeal had been rendered moot. *See id.* In *Grewal*, which featured a similar fact pattern, the court held that *Richards* was "sufficiently analogous" to that case "to control the mootness question." 2024 UT 20, ¶ 29.

¶37    In this case, by contrast, the remedy itself still exists. That is, we could still assess the merits of the title and boundary claims, and our ruling could affect the rights of the third party who purchased the Nielsens' parcel. But that third party is not a party to this appeal, nor did that party attempt to substitute into this appeal at any point prior to the issuance of our original decision. Thus, in the absence of that real party in interest, the issue here is whether our decision on the title and boundary claims could

provide relief to *the Nielsens*, specifically. Because we conclude that it couldn't, we must in turn conclude that the Nielsens' appeal as to those claims has been rendered moot.

¶38 Appellate courts in other jurisdictions have applied the mootness doctrine in situations like this one, where an appellant no longer has an interest in the real property anchoring their claims for relief. *See Ditto v. City of Chattanooga*, No. E2023-01185-COA-R3-CV, 2024 WL 4002560, at *1 (Tenn. Ct. App. Aug. 30, 2024); *Ahn v. Sanger*, No. 23-CV-02459, 2024 WL 1995807, at *1 (N.D. Cal. May 6, 2024) (reviewing a bankruptcy court ruling). In *Ditto*, an appellant's case was mooted when he sold the property at issue to a third-party purchaser while his appeal was pending. 2024 WL 4002560, at *1. There, a city sought to condemn and demolish the structures on the appellant's property, and the appellant was denied an injunction prohibiting the city from doing so. *See id.* However, on appeal, the court held that it was "undisputed" that the appellant "no longer ha[d] any legal interest" in the property that was the "subject of [the] litigation" because the appellant "concede[d] that he sold the [p]roperty to a third party after initiating" the appeal. *Id.* at *5. The court thus held that even if it reversed, the appellant was "no longer entitled to anything having to do with the [p]roperty" and, as a result, the court's "ruling would not affect him in the slightest." *Id.* The court held that the appellant's claims were therefore moot. *See id.*

¶39 Similarly, in *Ahn*, the claimant sought to have two liens encumbering the property at issue invalidated by a bankruptcy court. *See* 2024 WL 1995807, at *1. But by the time the case reached the reviewing court, the claimant no longer had any interest in the relevant property, and by agreement, there was no risk that a deficiency judgment could have been pursued against the claimant in personam. *See id.* Given this, the reviewing court explained that the claimant "lack[ed] a legally cognizable interest in whether" the liens "encumbering the property [were] void" and, therefore, the claimant's challenge was "constitutionally

moot because it [was] impossible for the [c]ourt to grant [the claimant] effectual relief on her claims." *Id.*

¶40    In this case, the Nielsens' title- and boundary-related claims are moot because the Nielsens sold their parcel to a third party while this appeal was pending. As in *Ditto* and *Ahn*, the Nielsens no longer have any legal interest in the property central to this dispute. Without any such interest, the Nielsens no longer have any interest in the title- and boundary-related claims in this case, which all involve the now-sold property. Thus, any relief we could afford the Nielsens on these claims would have no legal effect for them. And the third-party purchaser—who the Nielsens concede has "become a true successor in interest" to any "claims strictly tied to the land"—is not a party to this appeal. No motion to substitute was filed before the issuance of our original opinion, and, therefore, the real party in interest for the Nielsens' title- and boundary-related claims was never a part of this case. Thus, all claims brought by the Nielsens relating to the title and boundaries of the property are moot, and we are therefore without judicial power to address the merits of those claims.

¶41    The Nielsens resist this conclusion with several arguments. First, they argue that they did not need to file a motion for substitution and that—pursuant to civil rule 25(c)—they were permitted to continue litigating this appeal in their own names even without a motion for substitution ever having been filed. We reject this argument because, as already discussed, civil rule 25(c) does not apply to appellate proceedings and because appellate rule 38 does not contain civil rule 25(c)'s special provision allowing a party to continue pursuing a case in its own name after a transfer of interest.

¶42    Second, the Nielsens point to two motions—a motion to substitute and a motion seeking reinstatement of the appeal on the title and boundary claims, both filed *after* the issuance of our original opinion—that, if granted, would allow the new owner of the property to litigate the appeal in his own name. But the

obvious problem is that these motions were filed after we issued our opinion ruling against the Nielsens on the mootness issues. With the issuance of that opinion, the appellate issues were decided and the appeal was effectively over. While appellate rule 38 does not set forth specific timelines for the filing of motions for substitution of parties, in our view a motion filed after the issuance of the final appellate opinion should usually be deemed untimely. And in our view, it was untimely here.

¶43    The Nielsens clearly knew about the sale of their property long before our original opinion issued. Indeed, the Cronquists filed a motion to dismiss this appeal, on mootness grounds, only four days after the Nielsens filed their appellate brief. The Nielsens filed an opposition to that motion to dismiss, but neither they nor the third-party purchaser—either in that opposition or anywhere else—sought permission for a substitution of parties. Indeed, in that opposition, the Nielsens maintained that substitution was not required. Waiting to file such a motion until *after* the issue is resolved against them in the original opinion is simply too late. On this basis, we deny the Nielsens' belated motion for substitution and their motion to reinstate the appeal.

¶44    Third, the Nielsens argue that the sale of the property did not render moot the other claims in the appeal, including the tort claims and requests for attorney fees. This point is well taken, and we address the remaining claims in Part II below. But the viability of those remaining claims does not save the title- and boundary-related claims from becoming moot as to the Nielsens. *See Grewal*, 2024 UT 20, ¶ 31 (concluding that a dispute regarding attorney fees was not mooted by the sale of the relevant property even though the challenges related to the property itself were rendered moot); *see also Dominguez v. Dominguez*, 583 S.W.3d 365, 371 (Tex. App. 2019) (holding that the sale of property mooted the issues relating to the property but that "for the remaining issues, . . . the rule against mootness [did] not apply").

¶45 Finally, the Nielsens argue that appellate rule 38 is permissive and does not require substitution of the parties. We agree that rule 38 is permissive, but we do not see how this function of the rule saves the title- and boundary-related claims from becoming moot on appeal if the real party in interest is not properly substituted. The third party here was certainly not required to substitute into this appeal, nor were the Nielsens required to substitute out. But without such substitution, we are being asked to adjudicate title and boundary claims without having the actual owner of the relevant property before us. Again, any relief we could afford the Nielsens on these claims would have no legal effect. At least in the context of this case, rule 38 and our mootness doctrine exist in harmony.

¶46 In sum, because the Nielsens sold their parcel and no longer have any legal interest in it, any relief we could provide them as to the title- and boundary-related claims would have no legal effect. Those claims are therefore moot as to the Nielsens.

## II. The Remaining Claims

¶47 But the Nielsens' sale of their parcel to a third party did not moot any challenges regarding non-real-property claims. Those remain live, and the Nielsens may continue to press them. Indeed, they attempt to advance some such challenges in this appeal. But upon review of the Nielsens' briefing, it is frankly difficult to ascertain which parts of the court's findings and conclusions they are challenging. They assert that the trial court erred in various respects, and they even provide a chart of the alleged errors in the court's findings and conclusions. But they do not attempt to explain many of the alleged errors' relevance; they certainly make no systematic effort to tie the listed errors to particular issues or claims. We have done our best to figure out which non-real-property claims are at issue in this appeal, but we note our supreme court's observation that "[a] party may not simply point toward a pile of sand and expect the court to build a castle." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248.

¶48 After reviewing the briefs, we can discern adequately briefed challenges to the trial court's findings and conclusions regarding the Cronquists' sheet-metal conversion claim and to the court's attorney fees awards, and we address the merits of those challenges below. But we reject any other intended challenges as inadequately briefed or clearly without merit.[6] *See* Utah R. App.

---

6. In this case, the Nielsens have not adequately briefed several issues. For instance, they asserted claims for intentional and negligent infliction of emotional distress at trial and received an adverse judgment on these claims, and while they note these claims in their chart of errors, they do not provide any authorities or analysis on these particular claims or explain how the trial court erred in ruling against them on these claims. Likewise, the court found for the Cronquists on their nuisance claim regarding the cameras that the Nielsens had set up near the Cronquists' parcels, yet the Nielsens' brief is devoid of any analysis as to this particular nuisance claim. And the Nielsens' assertion that the trial court erred by denying their motion for a new trial is also inadequately briefed, given that the Nielsens merely assert generally that errors in the findings of fact and conclusions of law merit a new trial.

One other claim mentioned in the Nielsens' briefs—while not necessarily inadequately briefed—fails on its merits. The Nielsens assert that the trial court erred by denying their motion for partial summary judgment before trial. Part of their argument turned on the boundary-related claims discussed in Part I, which are now moot. But another part involved their conversion and nuisance claims. Specifically, the Nielsens argue that because the Cronquists did not deny allegations of conversion and nuisance in their answer, those allegations should have been deemed admitted for purposes of trial and summary judgment granted accordingly. This argument fails, because in their answer, the Cronquists included the following: "To the extent that any allegations remain that have not been specifically addressed herein, [the Cronquists] deny any such allegations." And rule 8(b)

(continued…)

P. 24(a)(8) (stating that a party "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal"); *see also Cottam v. IHC Health Services Inc.*, 2024 UT App 19, ¶ 15, 544 P.3d 1051 (stating that parties must "persuade a reviewing court through reasoned, supported argument that the [trial] court committed harmful, reversible error—a burden that necessarily requires the appellant to address the reasoning and basis of the [trial] court's ruling and to explain why that court got it wrong"—and that "when an appellant's brief fails to satisfy the minimal requirements of rule 24, we need not discuss the merits of the case" (cleaned up)).

A.    Conversion of Sheet Metal

¶49    The Nielsens challenge the trial court's ruling in favor of the Cronquists on their conversion claim regarding the sheet metal. Specifically, they argue that the court's conversion ruling adjudicated the rights of—and effectively awarded relief to—a non-party (Destry) over whom the trial court had no jurisdiction. On this point, we agree with the Nielsens.

¶50    "To prove conversion, a party must establish an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession, and that the party is entitled to immediate possession of the property at the time of the alleged conversion." *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶ 11, 338 P.3d 222 (cleaned up).

¶51    In this case, the trial court's findings and conclusions do not identify the "person entitled to" the sheet metal. *See id.* (cleaned up). Terry's son, Destry, provided sheet metal for the

---

of the Utah Rules of Civil Procedure permits a party to "deny all of the statements in a claim by general denial." The Nielsens do not address why we should not treat the Cronquists' denial as a general denial consistent with rule 8.

shed's roofing and siding, and left some of it near the shed. And at some point, Travis took the remaining sheet metal, transported it to another property, and refused to return it to either Destry or Terry. The court found that Destry had "testified that the metal belonged to him and he gave permission for its use on" Terry's shed. Yet the court ordered that "the metal be returned to Terry who was the intended beneficiary of the metal." No other findings were made as to the ownership of the spare sheet metal.

¶52 To the extent the court found that Destry was the person entitled to the sheet metal, the court effectively awarded relief to a non-party over whom it had no jurisdiction. *See Van Leeuwen v. BANA RESI-NON-CORE*, 2023 UT App 91, ¶ 31, 536 P.3d 84 (explaining that "the trial court had no jurisdiction to grant the non-party relief" when the "non-party failed to intervene and the requirement of intervention was not waived by the opposing party" (cleaned up)); *Fisher v. Fisher*, 2003 UT App 91, ¶ 19, 67 P.3d 1055 (holding that the trial court had no jurisdiction to enforce a lien filed by a non-party); *Ostler v. Buhler*, 1999 UT 99, ¶ 9, 989 P.2d 1073 (reversing the trial court's order awarding disbursement to a non-party for lack of jurisdiction); *Openshaw v. Openshaw*, 12 P.2d 364, 365 (Utah 1932) (holding that a judgment "in favor of a person who is not a party to the action or proceeding is void because the court has no jurisdiction to make it"). That was reversible error. Destry was not a party to the action and should not have been afforded relief on the conversion claim.

¶53 To the extent that the trial court was attempting to find that the sheet metal actually belonged to *Terry*, the findings and conclusions do not adequately articulate this. *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 28, 70 P.3d 35 (explaining that findings of fact "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached" (cleaned up)). The trial court did not find that Terry was the owner of the sheet metal, but instead only ordered that the metal be returned to him because he was the "intended beneficiary" of the metal.

But the court did not explain how Terry came to be the intended beneficiary of the metal—it made no factual findings on this point, and it did not discuss any legal theory under which such status might be obtained.

¶54 Accordingly, we vacate the court's order regarding the sheet metal, and we remand the matter for entry of more detailed findings and conclusions on this point. *See Monaco Apartment Homes v. Figueroa*, 2021 UT App 50, ¶ 6, 489 P.3d 1132 ("Where the inadequacy of the trial court's findings of fact and conclusions of law results in our inability to ascertain the basis of the trial court's decision, we are prevented from effectively reviewing [that] decision and may remand for the entry of more detailed findings." (cleaned up)).

B. Attorney Fees

¶55 Finally, the Nielsens challenge the trial court's award of attorney fees to the Cronquists on two different claims. But here, the Nielsens' challenge is limited: they assert simply that the trial court abused its discretion in making its determination as to what amount of fees was reasonable under the circumstances. We discern no reversible error in the court's award of attorney fees.

¶56 "The general rule in Utah is that, subject to certain exceptions, a party is entitled to attorney fees only if authorized by statute or by contract." *Meadowbrook, LLC v. Flower*, 959 P.2d 115, 117 (Utah 1998) (cleaned up). Two statutes provided the basis for the award of fees here. First, the trial court awarded fees to the Cronquists for defending against a claim for conversion of the Miles Spring water under Utah's bad-faith litigation statute, which entitles the prevailing party in a civil action to recover attorney fees "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." *See* Utah Code § 78B-5-825(1). Second, on a different claim, the court awarded fees to the Cronquists under a statute that entitles the "prevailing party in a civil action . . . to collect

reasonable costs and attorney fees, if that action is brought . . . for injuries caused by a diversion of water in violation of an existing water right." *See id.* § 73-2-28(4).

¶57 Notably, in their briefing, the Nielsens do not appear to challenge the court's conclusion that the Cronquists are *entitled* to attorney fees under these statutes.[7] Rather, they argue only that the amount of awarded fees was not reasonable. And as already noted, our standard of review on this issue is deferential. *See Zion Village Resort LLC v. Pro Curb U.S.A. LLC*, 2020 UT App 167, ¶ 22, 480 P.3d 1055 (stating that "a court's decision regarding the reasonableness of an attorney fee award is reviewed deferentially, for patent error or clear abuse of discretion" (cleaned up)).

¶58 Here, we perceive no abuse of discretion in the trial court's assessment of what amount of fees would be reasonable. The Cronquists' trial counsel submitted time records of the attorneys' work on the case, as well as an affidavit in support. These records included the hours spent on the case, the hourly rates charged for those hours, and descriptions of the tasks performed. For some of the entries, the Cronquists asked the court to award the full

---

7. To the extent the Nielsens attempted to mount a challenge to the Cronquists' entitlement to attorney fees under those two statutes, such a challenge is inadequately briefed. For example, the Nielsens attempt to "incorporate[] . . . by reference" their list of the trial court's alleged errors to argue that the attorney fees award was in error. For reasons already discussed, *see supra* ¶ 47, this argument does not help us determine whether the court erred on the merits of its fees award. For example, nothing in the Nielsens' chart of errors touches on the trial court's determination that the conversion of water claim proceeded with an *improper purpose* or that it was *meritless* under the bad faith statute. The Nielsens merely assert that because there were numerous errors in the findings and conclusions, it necessarily follows that the fees award was in error. We reject that argument because it lacks the analysis necessary for adequate briefing.

amount, and for other entries, they asked the court to award only one-third of the billed amount. After reviewing the request and supporting documentation, the trial court found that the Cronquists had "made reasonable efforts in calculating attorney[] fees relating to both" the interference with a water right claim and the conversion claim regarding the Miles Spring water.

¶59 The Nielsens argue that the Cronquists applied an arbitrary one-third coefficient to some entries "based on some internal metric" to calculate the amount allocatable to the water-related claims. But the Cronquists explained in their motion where that one-third figure comes from: the "33% calculation [was] based" in part on "the amount of fact preparation" attributable to the water-related claims "versus the rest of the claims in the case." And after reviewing the time entries—including the one-third allocation for the general case entries—the trial court found that the Cronquists had "made reasonable efforts in calculating attorney[] fees relating to both" the interference with a water right claim and the conversion claim regarding the Miles Spring water. We cannot say that the district court exceeded its discretion in this regard, especially given that the water-related claims consumed a considerable amount of focus in this litigation, as evident in the findings and conclusions themselves.

¶60 The Nielsens also argue that at least some of the time entries appear "unrelated to [the] current action" and that these entries should not have been included in the request for fees in this case. Specifically, they argue that "many of the charges" appear to be "related to work on [the Cronquists'] case with Smithfield City." As an example, the Nielsens point to a time entry involving strategy for "water rights" and "water facility & water service agreement," which the Nielsens argue relates to another case involving water rights and Smithfield City. But the Nielsens do not provide any explanation as to how that case or that research would be irrelevant to the instant case. Indeed, some research regarding Smithfield City's water rights or any agreement the city may have had with the Nielsens (or their

predecessors-in-interest) seems relevant given that the Nielsens expressly argued that the city prohibited them from sharing water with another residence—Kim and Berniece's parcel.

¶61 For these reasons, we conclude that the trial court acted within its discretion in making its reasonableness assessment, and we therefore affirm the court's attorney fees awards.[8]

## CONCLUSION

¶62 Because the Nielsens sold the property central to their title- and boundary-related claims during this appeal, their appeal as to those claims is moot, and we dismiss the appeal as it relates to those claims. As for the remaining claims, we vacate the trial court's order regarding the conversion of sheet metal claim, because it was unclear in the findings and conclusions whether the court was awarding relief to a non-party, and we remand this case to the trial court for further proceedings on that point. And finally, we conclude that the court did not abuse its discretion in making its reasonableness assessment regarding attorney fees, and we therefore affirm the court's attorney fees awards.

––––––––––

8. The Cronquists request attorney fees for having to address a "frivolous appeal," presumably pursuant to rule 33 of the Utah Rules of Appellate Procedure. We decline to grant this request. Fees are to be awarded under this rule "only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 36, 440 P.3d 757 (cleaned up). While we ultimately reject some of the Nielsens' arguments, we do not consider this an "egregious" appeal worthy of sanctions.